JOYCE CHEN (NY Reg. #4717245)
E-mail: Joyce.Chen@cfpb.gov
Phone: (202) 702-4226
1700 G Street, NW
Washington, D.C. 20552

*Attorney for Petitioner*
*Consumer Financial Protection Bureau*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Petitioner,<br><br>v.<br><br>BLOCK, INC.,<br><br>Respondent. | Case No. 3:22-mc-80214<br><br>**MEMORANDUM IN SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.   Statement of Facts............................................................................................... 1

II.  The Court Should Enforce the CIDs................................................................... 5

   A.   The Bureau's CIDs Should Be Enforced Because It Has the Appropriate Authority, Followed the Required Procedures, and Seeks Relevant and Material Evidence............... 7

   B.   Block Cannot Rebut the Bureau's Prima Facie Case for Enforcement.................... 12

III. Conclusion........................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*CFPB v. Great Plains Lending, LLC*,
   846 F.3d 1049 (9th Cir. 2017) ............................................................................................... 6

*CFPB v. Great Plains Lending, LLC*,
   No. CV142090MWFPLAX, 2014 WL 12685941 (C.D. Cal. May 27, 2014) ................. 6, 13

*EEOC v. Aaron Bros. Inc.*,
   620 F. Supp. 2d 1102 (C.D. Cal. 2009) ................................................................................ 13

*EEOC v. Fed. Exp. Corp.*,
   558 F.3d 842 (9th Cir. 2009) ......................................................................................... 6, 7, 9

*EEOC v. Karuk Tribe Housing Authority*,
   260 F.3d 1071 (9th Cir. 2001) ............................................................................................... 5

*EEOC v. McCormick & Schmick's*,
   No. C07-80065 WHA, 2007 WL 1430004 (N.D. Cal. May 15, 2007) .......................... 13, 14

*EEOC v. McLane Co.*,
   581 U.S. 72 (2017) ................................................................................................................. 6

*EEOC v. McLane Co.*,
   804 F.3d 1051 (9th Cir. 2015) ......................................................................................... 6, 12

*EEOC v. Z Foods, Inc.*,
   No. 109CV02127OWWSMS, 2011 WL 13254378 (E.D. Cal. Feb. 23, 2011) ................... 13

*FTC v. XCast Labs, Inc.*,
   No. MISC211026MWFMRWX, 2021 WL 6297885 (C.D. Cal. Dec. 9, 2021) .................. 12

*FTC v. XCast Labs, Inc.*,
   No. MISC211026MWFMRWX, 2022 WL 60527 (C.D. Cal. Jan. 6, 2022) ....................... 13

MEMORANDUM IN SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS
iii

*United States v. California*,

   No. 18CV2868-L-MDD, 2019 WL 2498316 (S.D. Cal. Mar. 5, 2019) ................................ 9

*United States v. California*,

   No. 18CV2868-L-MDD, 2019 WL 2498318 (S.D. Cal. Mar. 26, 2019) .............................. 9

*United States v. Exxon Mobil Corp.*,

   943 F.3d 1283 (9th Cir. 2019) ........................................................................................ 9

*United States v. Morton Salt Co.*,

   338 U.S. 632 (1950).................................................................................................. 6, 7

**Statutes**

12 U.S.C. § 5481 ............................................................................................................... 8

12 U.S.C. § 5531 ..................................................................................................... 2, 3, 7, 8

12 U.S.C. § 5536 ..................................................................................................... 2, 3, 7, 8

12 U.S.C. § 5562 ..................................................................................................... 1, 3, 7, 8

12 U.S.C. § 5564 ............................................................................................................... 8

15 U.S.C. § 1693 ......................................................................................................... 2, 3, 7

**Regulations**

12 C.F.R. § 1005.11 ..................................................................................................... 2, 3, 7

12 C.F.R. § 1005.18 ..................................................................................................... 2, 3, 7

12 C.F.R. § 1005.6 ....................................................................................................... 2, 3, 7

12 C.F.R. § 1080 ............................................................................................................... 8

12 C.F.R. § 1080.10 .......................................................................................................... 1

12 C.F.R. § 1080.5 ............................................................................................................ 8

12 C.F.R. § 1080.6 ................................................................................................. 2, 3, 8, 12

12 C.F.R. Part 1005.................................................................................................................... 3, 7

The Consumer Financial Protection Bureau (Bureau) petitions this Court for an order requiring Block, Inc. (Block) to respond fully to Document Request Nos. 5 and 6 of the civil investigative demand (CID) the Bureau issued to it on August 4, 2020 (2020 CID), (See Declaration of Joyce Chen (Chen Decl.), Exh. A), and Interrogatory Nos. 24, 25, 27, and 29, and Document Request Nos. 13, 14, 15, and 18 of the CID the Bureau issued to it on August 6, 2021 (2021 CID).  Chen Decl., Exh. C.

The Consumer Financial Protection Act of 2010 (CFPA) gives the Bureau authority to issue CIDs and to enforce them in federal district court. 12 U.S.C. §§ 5562(c)(1), (e)(1). CIDs are a type of investigative, administrative subpoena.  The Bureau may initiate a proceeding to enforce a CID by filing a petition in the federal district court where the CID recipient "resides, is found, or transacts business" for an order to enforce the CID. 12 U.S.C. § 5562(e)(1); 12 C.F.R. § 1080.10(b)(1). Because the Bureau has authority to issue the 2020 CID and the 2021 CID, and this Court has authority to enforce them, the Bureau respectfully requests that this Court order Block to show cause as to why it should not be required to comply with the CIDs and, thereafter, enter an order requiring it to fully respond to Interrogatory Nos. 24, 25, 27, and 29, and Document Request Nos. 5, 6, 13, 14, 15, and 18[1] of the 2020 CID and the 2021 CID.

I. **Statement of Facts**

Block is a multi-billion dollar global corporation that self-identifies primarily as a technology company. It has two primary "ecosystems," Cash App, which was established as a mobile payment app for consumers, and Square, which is a payments platform for sellers.

---

[1] The Requests in both the CIDs are sequentially numbered so that, for example, the first Document Request in the 2021 CID is Document Request No. 9.

MEMORANDUM IN SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS
1

In 2020, the Bureau initiated an investigation into Cash App, focusing on potential violations of the CFPA's prohibition on unfair, deceptive, or abusive conduct, 12 U.S.C. §§ 5531, 5536, and the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 et seq., and its implementing rule, Regulation E, 15 U.S.C. § 1693 et seq., principally 12 C.F.R. §§ 1005.11 and 1005.6, or 12 C.F.R. §§ 1005.18(d) and 1005.18(e). Chen Decl. ¶5. Pursuant to that investigation, the Bureau issued the 2020 CID to Block, requesting interrogatories, written reports, tangible things, and documents, which was duly served by certified mail. *Id.* ¶4. In response to Block's claims of burden, the Bureau modified that CID, including by providing extended deadlines, with Block's complete compliance due by October 14, 2020. *Id.* ¶¶7-9. Block has still not fully responded to that CID, in particular with respect to Document Request Nos. 5 and 6, and has not provided a certificate of compliance in connection with it. *Id.* ¶¶11, 13, 25. Such certificates are required by the Bureau's rules on investigations. 12 C.F.R. §§ 1080.6(a)(1)(ii), (2)(ii), (3)(ii).

On August 6, 2021, the Bureau served the 2021 CID by email on Block's counsel, who was authorized to accept service of it on Block's behalf, as part of the same investigation. Chen Decl. ¶14. After three modifications to account for Block's claimed burden, the 2021 CID required Block to complete its production in response to interrogatories and requests for written reports and documents by February 14, 2021. *Id.* ¶19.

Both the 2020 and the 2021 CIDs contained the following Notification of Purpose:

> The purpose of this investigation is to determine whether financial technology companies or associated persons, in connection with deposit-taking activities, transmitting or exchanging funds, or otherwise acting as a custodian of funds, or selling, providing, or issuing stored value or payment instruments, or providing payments or other financial data processing products or services, have: (1) deprived consumers of access to their funds or failed to adequately address customer concerns regarding fraud and errors in a manner that is unfair in violation of Sections 1031 and 1036 of the Consumer Financial

>      Protection Act, 12 U.S.C. §§ 5531, 5536; or (2) failed to follow the requirements applicable to resolving errors and liability of consumers for unauthorized transfers in a manner that violates Regulation E, 12 C.F.R. Part 1005, Subpart A, implementing the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., principally 12 C.F.R. §§ 1005.11 and 1005.6, or 12 C.F.R. §§ 1005.18(d) and 1005.18(e).

*Id.*, Exhs. A and C.

With respect to the 2020 CID, on August 21, 2020, counsel for the Bureau and Block met and conferred about that CID in accordance with 12 C.F.R. § 1080.6(c). *Id.* ¶7. On August 25, 2021, Block submitted a letter to the Bureau seeking modifications to the 2020 CID. *Id.* ¶8. On August 31, 2020, the Bureau issued a letter modifying the CID to address the concerns raised in Block's August 25, 2020 letter, including an extension of time in responding to Document Request Nos. 5 and 6 until September 23, 2020, and requiring full compliance with the CID by October 14, 2020. *Id.* ¶9, Exh. B. Block never filed a petition to modify or set aside the 2020 CID pursuant to 12 U.S.C. § 5562(f); 12 C.F.R. § 1080.6(e). *Id.* ¶10. But Block failed to produce what appears to be a significant number of documents responsive to Document Request Nos. 5 and 6, including documents that were specifically referenced in documents Block did produce; thus, Block has not fully complied with those requests. *Id.* ¶13. Indeed, Block produced only 372 documents in response to the 2020 CID. *Id.* ¶11.

Counsel for the Bureau and Block met and conferred about the 2021 CID, in accordance with 12 C.F.R. § 1080.6(c), over the course of three meetings, on August 12, 19, and 20, 2021. *Id.* ¶15. On September 2, 2021, Block submitted a letter to Bureau counsel seeking modification of the 2021 CID, but the letter proposed only certain modifications. Block sought extensions of time for all but one of the requests, which it sought to hold in abeyance. For 35 of the requests, it simply said proposals were "to be determined," or

"TBD." *Id.* ¶16. Block never filed a petition with the Bureau to modify or set aside the 2021 CID. *Id.* ¶17. Following receipt of Block's September 2, 2021 letter, Bureau counsel embarked on a series of meetings and exchanges of correspondence with Block's counsel over the course of months to address claimed issues of burden, among other things. *Id.* ¶18. The Bureau modified the CID three times in response to Block's claims of burden by letter on September 16, 2021, October 22, 2021, and December 16, 2021, providing extensions of time to produce materials in response to the CID and limiting the requests. *Id.* ¶19, Exhs. D, E, and F. Pursuant to those modifications, Block was supposed to make full production in response to the 2021 CID by December 5, 2021, with the exception of certain data-related requests, not at issue here, which were extended until February 14, 2022. *Id.* ¶19.

One year after the 2021 CID was issued, Block has yet to produce any information in response to Interrogatory Nos. 24, 25, 27, and 29, and Document Request Nos. 13, 14, 15, and 18. *Id.* ¶24. The information Block *has* produced in response to the CIDs has repeatedly been produced late and is often non-responsive, incomplete, or otherwise deficient, impairing the Bureau's ability to conduct a meaningful investigation of Block's practices. *Id.* ¶25. From the last time the Bureau modified the CID until now, Bureau staff has met with and exchanged multiple letters and communication with Block in an attempt to resolve production issues, including working with Block to identify relevant custodians and search terms. *Id.* ¶21. Nevertheless, hiding behind repeated excuses and deflections, and making repeated assurances that it "hopes" or "expects" or will "endeavor" to produce required responses at a time "in the near future," Block's productions remain outstanding. *Id.* ¶¶23, 26-27.

Even though the Bureau continued to work with Block when it raised issues of burden well after the ten-day meet and confer period, and even though the Bureau is committed to

continuing to work with Block, Block's repeated pattern of delay must stop. Most recently, Block has indicated that it will "endeavor" to begin a rolling production by August 31, 2022. *Id.* ¶26. But after waiting over a year for the production of *any* information in response to eight different Requests, the Bureau cannot rely on Block's tepid assurances about "hoping" or "endeavoring" to respond to outstanding Bureau Requests any longer.

In fact, after more than two years, this multi-billion dollar public company, responsible for maintaining and moving billions of consumer dollars through the economy, has managed to produce a total of only 894 documents in response to the Bureau's two CIDs. *Id.* ¶25.

Although Block has failed to fully respond to many of the requests in the 2021 CID, and has not provided the required certificates of compliance for either CID, at this time, the Bureau is seeking enforcement solely with respect to Interrogatory Nos. 24, 25, 27, and 29, and Document Request Nos. 5, 6, 13, 14, 15, and 18 of the 2020 CID and the 2021 CID, in an effort to simplify this matter for the Court and to conserve judicial resources.[2]

II.    **The Court Should Enforce the CIDs**

In the Ninth Circuit, "[c]ourts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." *EEOC v. Karuk Tribe Housing Authority*, 260 F.3d 1071, 1076 (9th Cir. 2001). A Bureau CID is an administrative subpoena. See, *e.g.*, *CFPB v. Great Plains Lending, LLC*, No. CV142090MWFPLAX, 2014 WL 12685941, at *18 (C.D. Cal. May 27,

---

[2] Although the Bureau is only seeking to enforce the CIDs with respect to certain Requests at this time, the Bureau reserves its rights to enforce the CIDs with respect to other Requests to which Block has provided deficient responses. At this time, the Bureau continues to work with Block to obtain complete responses to those Requests.

2014), (granting the Bureau's petition to enforce a CID, and referring to it throughout as an administrative subpoena), *aff'd*, 846 F.3d 1049 (9th Cir. 2017).

"The scope of the judicial inquiry in an … agency subpoena enforcement proceeding is quite narrow. The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (citations omitted). *See also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

After the agency make its prima facie case, "the court must enforce the subpoena unless the objecting party shows that the subpoena is overbroad or that compliance would be unduly burdensome." *EEOC v. McLane Co.*, 804 F.3d 1051, 1056 (9th Cir. 2015), *vacated on other grounds*, 581 U.S. 72 (2017). "District courts in this Circuit have adopted the rule of the Fourth and D.C. Circuits, which define 'unduly burdensome' as a demand that threatens to unduly disrupt or seriously hinder normal operations of a business." *Great Plains Lending, LLC*, 2014 WL 12685941, at *17. Under this adopted standard, "the burden of proving that an administrative subpoena is unduly burdensome is not easily met." *Id.* (citations omitted).

As shown below, the Bureau has the appropriate authority, it followed the required procedures, and the evidence sought by the CIDs is relevant and material to the investigation. Block cannot show that the CIDs were unduly burdensome. The Court should therefore enforce the CIDs.

**A. The Bureau's CIDs Should Be Enforced Because It Has the Appropriate Authority, Followed the Required Procedures, and Seeks Relevant and Material Evidence**

The Bureau easily meets the criteria for a prima facie case of CID enforcement. First, "it is well-established that an administrative subpoena is to be enforced unless agency authority is plainly lacking," *Fed. Exp. Corp.*, 558 F.3d at 851, which is most definitely not the case here. Congress granted the Bureau the authority to investigate in this instance. The CFPA broadly authorizes the Bureau to investigate violations of federal consumer-financial laws and to issue a CID to "any person" the Bureau "has reason to believe … may be in possession, custody, or control of … any information, relevant to a violation." 12 U.S.C. § 5562(c). And an agency such as the Bureau "has a power of inquisition … [and] can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt Co.*, 338 U.S. at 642-43.

The violations potentially at issue are within the scope of the Bureau's authority. As set forth in the Notification of Purpose in the 2021 CID, the Bureau issued it to determine whether:

> financial technology companies or associated persons, in connection with deposit-taking activities, transmitting or exchanging funds, or otherwise acting as a custodian of funds, or selling, providing, or issuing stored value or payment instruments, or providing payments or other financial data processing products or services, have: (1) deprived consumers of access to their funds or failed to adequately address customer concerns regarding fraud and errors in a manner that is unfair in violation of Sections 1031 and 1036 of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531, 5536; or (2) failed to follow the requirements applicable to resolving errors and liability of consumers for unauthorized transfers in a manner that violates Regulation E, 12 C.F.R. Part 1005, Subpart A, implementing the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., principally 12 C.F.R. §§ 1005.11 and 1005.6, or 12 C.F.R. §§ 1005.18(d) and 1005.18(e).

Chen Decl., Exhs. A and C at 1 (CID Notification of Purpose).

The Bureau's investigation falls squarely within its authority under the CFPA to investigate violations of the CFPA and other federal consumer financial laws, including EFTA, and Regulation E. 12 U.S.C. § 5564(a); 12 U.S.C. §§ 5481(12)(C), (14). Further, the activities described in the Notification of Purpose -- deposit-taking activities, transmitting or exchanging funds, or otherwise acting as a custodian of funds, or selling, providing, or issuing stored value or payment instruments, or providing payments or other financial data processing products or services -- are consumer financial products or services within the Bureau's scope of authority. 12 U.S.C. § 5531(a), 12 U.S.C. §§ 5481(15)(a)(iv), (vii). Because Block is engaged in offering or providing consumer financial products or services, Block is a covered person under the CFPA, and thus subject to the Bureau's authority. 12 U.S.C. § 5481(6)(a); 12 U.S.C. § 5536(a).[3]

Second, the Bureau followed all applicable procedural requirements required by the CFPA and its implementing regulation related to the issuance of a CID. 12 U.S.C. § 5562(c), 12 C.F.R. § 1080. Both the 2020 CID and the 2021 CID were issued by a Deputy Assistant Director of the Office of Enforcement, and included a Notification of Purpose advising Block of the nature of the conduct being investigated. Chen Decl., Exhs. A and C at 1; *see* 12 U.S.C. § 5562(c)(2); 12 C.F.R. §§ 1080.5, 1080.6(a). The CIDs were duly served. The 2020 CID was served, as required by the CFPA, by certified mail. 12 U.S.C. § 5562(b)(8)(C). The

---

[3] Even if Block were not a covered person, it would still be bound to respond to the Bureau's CIDs; the Bureau's authority to issue CIDs is broader than its enforcement authority. *See* 12 U.S.C. § 5562(c)(1) ("Whenever the Bureau has reason to believe that *any person* may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to a violation, the Bureau may, before the institution of any proceedings under the Federal consumer financial law, issue in writing, and cause to be served upon such person, a civil investigative demand...") (emphasis added).

2021 CID was served by sending it by email to Block's counsel, who was authorized to accept service of the CID and acknowledged receipt.

Third, the information sought is relevant and material to the investigation. Indeed, in the context of administrative subpoena enforcement actions, "[r]elevancy is determined in terms of the investigation rather than in terms of evidentiary relevance." *Fed. Exp. Corp.*, 558 F.3d at 854. Indeed, the Ninth Circuit has been clear that "[t]he relevance requirement is not especially constraining, but is instead generously construed to afford the agency access to virtually any material that might cast light on the matter under investigation." *United States v. Exxon Mobil Corp.*, 943 F.3d 1283, 1287 (9th Cir. 2019) (citations and quotations omitted). Courts in the Ninth Circuit have generally deferred to a declaration from an agency official "sufficient to demonstrate that the requested records are relevant and material to an ongoing investigation." *United States v. California*, No. 18CV2868-L-MDD, 2019 WL 2498316, at *2 (S.D. Cal. Mar. 5, 2019), (citations omitted), *petition granted on reconsideration*, No. 18CV2868-L-MDD, 2019 WL 2498318 (S.D. Cal. Mar. 26, 2019).

The CFPA authorizes the Bureau to issue a CID to obtain "any information, relevant to a violation" of the federal consumer financial laws. 12 U.S.C. § 5562(c). The requests at issue, and their relevancy and materiality to the Bureau's investigation, are each generally described below, as attested to by Joyce Chen, senior litigation counsel with the Bureau's Office of Enforcement:

- Interrogatory No. 24 requests information regarding rate, number, and amount of chargebacks and Automated Clearing House (ACH) returns for Cash App transactions, and is relevant and material to the investigation because it seeks information about, among other things, scope of harm and liability in connection with potential EFTA, Regulation E, and CFPA violations. Chen Decl. ¶29.

- Interrogatory No. 25 requests information regarding the communications Block has had with financial institutions or card networks regarding the handling, investigating, or monitoring of the Block's chargebacks, ACH return rates, or related metrics, including whether Block was told it was approaching or exceeding any thresholds. It is relevant and material to the investigation because it seeks information about, among other things, Block's conduct and knowledge associated with potential CFPA violations, at least. *Id.* ¶30.

- Interrogatory No. 27 requests the data points, triggers, and other analyses that Block has used to determine that activity in a Cash App account warrants freezing, suspending, locking, or blocking a transaction. This information is relevant and material to the investigation because it seeks information about, among other things, Block's processes associated with one area that is a focus of the investigation. *Id.* ¶31.

- Interrogatory No. 29 requests that Block identify all individuals who participated in responding to this CID, the current position of each individual, and the specific tasks performed by each individual. This information is relevant and material to the investigation because, among other things, it may assist in the identification of salient witnesses. *Id.* ¶32.

- Document Request Nos. 5 and 6 seek policies, procedures, and training materials relating to how Block has received, handled, and addressed issues, consumer complaints, or disputes regarding errors, unauthorized transfers, blocked or frozen access to consumer accounts, fraud and identity theft, delayed payment transactions, closing or cancellation of accounts, lost or stolen devices, and limitation of consumer liability. This information is relevant and material to the

investigation because, among other things, it seeks information about Block's own stated rules and instructions for addressing a number of the areas of focus of the investigation. *Id.* ¶33.

- Document Request No. 13 requests Block's internal and external communications regarding customer service activities, account takeovers, the exceeding of chargeback thresholds set by banks or card networks, and audits or other analyses. This information is relevant and material to the investigation because, among other things, it seeks information about Block's conduct and knowledge regarding issues of focus in the investigation. *Id.* ¶34.

- Document Request No. 14 requests certain communications of Brian Grassadonia, the CEO of Cash App, relating to specified issues of concern in the investigation, and is relevant and material to the investigation because it provides information about the CEO's involvement and understanding of these issues. *Id.* ¶35.

- Document Request No. 15 requests Slack Channel communications regarding definitions of data fields relating to customer service and disputes, areas of focus of the investigation. This is relevant and material to the investigation because Block has not provided a data dictionary for its data fields, and a Block official testified that the source for such definitions were Slack Channel communications. *Id.* ¶36.

- Document Request No. 18 requests audits, analyses, policies, procedures, and communications regarding chargebacks, customer service activities, and reports generated from spreadsheets used by Block in conducting or tracking customer service activities. This is relevant and material to the investigation because it seeks information about one issue of focus in the investigation. *Id.* ¶37.

Because the Bureau has shown, with respect to the 2020 CID and the 2021 CID, that it has authority to investigate, the procedural requirements have been followed, and the evidence sought is relevant and material to the investigation, the Bureau has made a prima facie showing that enforcement of the 2020 CID and the 2021 CID is appropriate, at least with respect to Interrogatory Nos. 24, 25, 27, and 29, and Document Request Nos. 5, 6, 13, 14, 15, and 18 of the 2020 CID and the 2021 CID.

**B.  Block Cannot Rebut the Bureau's Prima Facie Case for Enforcement**

Following this prima facie showing, the burden would shift to Block to demonstrate that the CIDs are overbroad or that compliance would be unduly burdensome. *McLane Co.*, 804 F.3d at 1056. Block will not prevail on this point however, because 1) it failed to file a petition to modify or set aside either of the CIDs, and thus has waived its ability to make this showing; and 2) in any event, it could not show that either CID, particularly focusing on the requests at issue here, are "unduly burdensome."

While Block has stated, both in meetings and in letters to the Bureau, that it finds the CIDs burdensome, it never availed itself of its right to petition the Director to modify or set aside either CID, on that or any other basis. Under 12 U.S.C. § 5562(f) and 12 C.F.R. § 1080.6(e), a respondent may file a petition to modify or set aside the CID within 20 days of service or, if the return date is less than 20 calendar days after service, prior to the return date. Where a respondent has received notice of an administrative procedure to challenge a CID, and does not do so, it has waived its ability to raise those arguments in a proceeding to enforce the CID in federal court. *See FTC v. XCast Labs, Inc.*, No. MISC211026MWFMRWX, 2021 WL 6297885, at *3 (C.D. Cal. Dec. 9, 2021) (holding that the defendant had "forfeited its ability to oppose enforcement of the CID in federal court" because it had "received notice of the administrative procedure to challenge the scope and

contents of the CID before the FTC… [but] it chose not to avail itself of that remedy"), *report and recommendation adopted*, No. MISC211026MWFMRWX, 2022 WL 60527 (C.D. Cal. Jan. 6, 2022). Here, the administrative procedure to challenge the CIDs existed and Block received notice of it in the CIDs, as part of both the instructions and the Rules on Investigations attached to the CIDs. Chen Decl., Exhs. A and C. Block failed to file such petitions, and therefore cannot complain of overbreadth or burden now.

But even if the Court entertains any such objections in this case, "unduly burdensome" is a high standard. Block will have to show that responding to the requests would "unduly disrupt or seriously hinder normal operations of [its] business." *Great Plains Lending, LLC*, 2014 WL 12685941, at *17. *See also EEOC v. Z Foods, Inc.*, No. 109CV02127OWWSMS, 2011 WL 13254378, at *5 (E.D. Cal. Feb. 23, 2011) (holding that this burden is "difficult to meet," and enforcing the administrative subpoena); *EEOC v. Aaron Bros. Inc.*, 620 F. Supp. 2d 1102, 1106 (C.D. Cal. 2009) (same). Block is not only an extremely large company with revenues of over $17 billion in 2021. It is also a technology company, and therefore should be quite up to the task of searching for and producing documents or collecting and providing information about its operations as it relates to the investigation. With such resources and capabilities, Block should have been able to comply with the CIDs long ago, and should not be able to avoid complying now. This is not like the case, *EEOC v. McCormick & Schmick's*, No. C07-80065 WHA, 2007 WL 1430004, at *7 (N.D. Cal. May 15, 2007), where a court took into consideration the fact that restaurants typically "leanly" staff their management positions in enforcing a more limited request than that in the original administrative subpoena. Block is not a medium-sized restaurant chain; it is a highly sophisticated multi-billion dollar data-driven technology corporation. And even if

it has to go out of its way to comply with the CID, as the court in *McCormick & Schmick's* stated, a "respondent cannot expect compliance to be painless." *Id.*

Because the Bureau has demonstrated the criteria to enforce its CIDs, and Block cannot rebut the Bureau's prima facie case, both because it has waived its right to do so and because it cannot show that it is unduly burdened by complying with the CIDs, the Court should enforce them.

### III. Conclusion

For the reasons discussed above, the Bureau respectfully requests that the Court order Block to show cause as to why it should not be compelled to comply with the 2020 CID and the 2021 CID, and, after hearing from the parties, order Block to fully respond to Interrogatory Nos. 24, 25, 27, and 29, and Document Request Nos. 5, 6, 13, 14, 15, and 18 of the 2020 CID and the 2021 CID, and grant other relief as the Court deems just and proper.

Dated: August 18, 2022

Respectfully submitted,

ERIC HALPERIN
Enforcement Director

DAVID RUBENSTEIN
Deputy Enforcement Director

CYNTHIA LESSER
Assistant Deputy Enforcement Director

/s/ Joyce Chen
JOYCE CHEN (NY Reg. #4717245)
(Appearing per Local Rule 11-2)
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Phone: 202-702-4226
Email: joyce.chen@cfpb.gov

*Attorneys for Petitioner*
*Consumer Financial Protection Bureau*

# CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2022, I caused a true and correct copy of the document entitled Memorandum in Support of Petition to Enforce Civil Investigative Demands to be served by U.S. mail and e-mail on counsel for Respondent Block, Inc., as follows:

>   Allyson Baker, Esq.
>   Paul Hastings LLP
>   2050 M Street NW
>   Washington, D.C. 20036
>   allysonbaker@paulhastings.com

>   /s/ Joyce Chen_____
>   JOYCE CHEN (NY Reg. #4717245)
>   (Appearing per Local Rule 11-2)
>   Consumer Financial Protection Bureau
>   1700 G Street, NW
>   Washington, DC 20552
>   Phone: 202-702-4226
>   Email: joyce.chen@cfpb.gov
>
>   *Attorneys for Petitioner*
>   *Consumer Financial Protection Bureau*