JOYCE CHEN (NY Reg. #4717245)
E-mail: Joyce.Chen@cfpb.gov
Phone: (202) 702-4226
1700 G Street, NW
Washington, D.C. 20552

*Attorney for Petitioner*
*Consumer Financial Protection Bureau*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Petitioner,<br><br>v.<br><br>BLOCK, INC.,<br><br>Respondent. | Case No. 3:22-mc-80214<br><br>**DECLARATION OF JOYCE CHEN IN SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS** |

Pursuant to 28 U.S.C. §1746, I, Joyce Chen, declare as follows:

1. I am a Senior Litigation Counsel in the Office of Enforcement at the Consumer Financial Protection Bureau (Bureau).

2. I am lead counsel on a nonpublic Bureau investigation concerning possible violations of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536, the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., and Regulation E, principally 12 C.F.R. §§ 1005.11 and 1005.6, or 12 C.F.R. §§ 1005.18(d) and 1005.18(e).

3. I am authorized to execute this declaration and verify the facts that are set forth in the Bureau's Petition to Enforce Civil Investigative Demands. The facts

set forth in this declaration are based on my personal knowledge or information made known to me in the course of my official duties.

**Procedural History of the CIDs**

4. On August 4, 2020, the Bureau, through David Rubenstein, a Deputy Assistant Director of the Office of Enforcement, issued a Civil Investigative Demand (2020 CID) to Block, Inc. (Block), formerly known as Square, Inc., and served it on Block via certified mail. See Exhibit A, attached.

5. The CID was issued to obtain information relating to an investigation into Cash App, an operating arm of Block, into potential violations of law, including violations of the CFPA's prohibition on unfair, deceptive, or abusive conduct and the Electronic Fund Transfer Act (EFTA), or its implementing rule, Regulation E, as described in the Notification of Purpose on the first page of the 2020 CID. See Exhibit A at 1.

6. The initial return date of the 2020 CID was August 26, 2020.

7. On August 21, 2020, Bureau staff met and conferred with Block's counsel about the 2020 CID in accordance with 12 C.F.R. § 1080.6(c) to discuss and attempt to resolve all issues regarding compliance with the CID.

8. On August 25, 2021, Block submitted a letter to the Bureau seeking to modify the 2020 CID.

9. On August 31, 2020, the Bureau issued a letter, attached as Exhibit B, modifying the 2020 CID to address the concerns raised in the August 21, 2020 meet and confer and Block's August 25, 2020 letter, including an extension of time in responding to Document Request Nos. 5 and 6 until September 23, 2020, and requiring full compliance with the CID by October 14, 2020.

Declaration of Joyce Chen in Support of Petition to Enforce Civil Investigative Demands
2

10. Block never filed a petition to modify or set aside the 2020 CID pursuant to 12 U.S.C. § 5562(f); 12 C.F.R. § 1080.6(e).

11. Block produced 161 documents by the modified return date. After several months of anemic additional production and prodding by the Bureau – including a Bureau letter pointing out just some of the deficiencies –Block produced only a total of 372 documents by April 30, 2021, nearly nine months after the CID was served, and six and a half months after the modified return date.

12. Indeed, while Block has claimed in correspondence with the Bureau that it produced a great deal of information, in fact the information it produced in response to the 2020 CID was deficient. Block did not adequately answer the written reports; and though it offered a meeting to provide additional information, the meeting was not helpful because Block staff present at the meeting could not answer many questions regarding data fields. To get the information it needed about Block's relevant data structure and systems, the Bureau was required to take testimony of Block's data scientist, who could only provide limited information based on his own knowledge.

13. In the end, Block failed to produce what appear to be key documents responsive to Document Request Nos. 5 and 6, including documents that were specifically referenced in the about 104 documents Block did produce in response to these requests. Document Request Nos. 5 and 6 generally requested the production of policies, procedures, and training materials related to Cash App's handling of various issues under investigation by the Bureau, including but not limited to errors, unauthorized transfers, lost or stolen devices, and the suspension of consumers' access to their accounts. Documents produced by Block make reference to or incorporate documents with titles that reflect that they are responsive -- such as "Cash Card- Report Cash Card

Missing/Stolen" -- but those apparently responsive documents have not been produced.

14. On August 6, 2021, the Bureau, through David Rubenstein, a Deputy Assistant Director of the Office of Enforcement, issued a second CID to Block, and served it via email to Block's outside counsel (2021 CID), who was authorized to accept service. See Exhibit C, attached. Block's outside counsel confirmed receipt of the 2021 CID on behalf of Block. Its return date was August 27, 2021.

15. Counsel for the Bureau and Block met and conferred about the 2021 CID, in accordance with 12 C.F.R. § 1080.6(c), over the course of three meetings, on August 12, 19, and 20, 2021.

16. On September 2, 2021, Block submitted a letter to the Bureau indicating that it wanted to modify the 2021 CID, but the letter proposed only certain modifications. Block sought extensions of time for all but one of the requests, which it sought to hold in abeyance. For 35 of the requests it simply said proposals were "to be determined," or "TBD."

17. Block never filed a petition with the Bureau to modify or set aside the 2021 CID pursuant to 12 U.S.C. § 5562(f); 12 C.F.R. § 1080.6(e).

18. Following its receipt of Block's September 2, 2021 letter, Bureau counsel embarked on a series of meetings and exchanges of correspondence with Block's counsel over the course of months to discuss Block's multiple claims of burden. The Bureau accommodated Block even when its requests for modification were made late in the process, months after the meet and confer period.

19. The Bureau modified the CID three times in response to Block's claims of burden by letter on September 16, 2021 (attached as Exhibit D), October 22, 2021 (attached as Exhibit E), and December 16, 2021 (attached as Exhibit F). The Bureau

provided extensions of time to produce materials in response to the CID and limited the requests. The vast majority of the requests had a production deadline of no later than December 5, 2021, with the exception of certain data-related requests, not at issue here, which were extended until February 14, 2022.

20. The modified deadlines as to the Requests relevant here were:

- The response to Interrogatory No. 27 addressing the period from January 1, 2020 until August 6, 2021 was due on September 30, 2021;

- Responses to Interrogatory Nos. 24, 25, 29, and Document Request Nos. 15 and 18 (except for communications) were due on October 22, 2021;

- Responses to Interrogatory No. 27 addressing the period from 2016 through 2019 and to Document Request Nos. 13, 14, and 18 (including communications) were due on November 5, 2021.

21. And from the last time the Bureau modified the CID until the filing date of this Petition, Bureau staff has met with and exchanged multiple letters and communication with Block in an attempt to resolve production issues, including working with Block to identify relevant custodians and search terms. For example, the Bureau spent months trying to work with Block in connection with the requests for communications in Document Request Nos. 13 and 18. The Bureau devised lists of custodians and modified both Document Requests to hold in abeyance communications that were not in the custody of those custodians.

22. By early February of 2022, the Bureau learned that Block would be

using technology assisted review (TAR), which would greatly reduce burden associated with reviewing communications for responsiveness, because the technology will reduce the total number of documents that need to be reviewed. Once a TAR model is trained, rolling production can begin shortly thereafter.

23. To date, Block has not produced a single document in response to Document Request Nos. 13 or 18. Block represented it was in the process of training its TAR model in March and April of 2022 and that it was "striving" to begin rolling productions of documents in May of 2022, but to date it has produced nothing in response to those Requests.

24. Block has made deficient production in response to many of the 2021 CID requests,[1] and more than one year after the 2021 CID was issued, has still produced nothing in response to Interrogatory Nos. 24, 25, 27, and 29, and Document Request Nos. 13, 14, 15, and 18.

25. As of the filing date of this Petition, after more than two years, Block has produced a total of only 894 documents in response to both CIDs. Less than 500 documents have been produced in response to the 2021 CID, and Block has not provided certificates of compliance with respect to either the 2020 CID or the 2021 CID. And the information Block has produced in response to the CIDs has repeatedly been produced late and is often non-responsive, incomplete, or otherwise deficient, rendering the Bureau unable to conduct a meaningful investigation of Block's practices.

26. Most recently, on July 11, 2022, the Bureau sent a letter to Block's

---

[1] To conserve judicial resources and streamline this Petition, the Bureau is only seeking to enforce the CIDs with respect to certain requests at this time, although the Bureau reserves its rights to enforce the CIDs with respect to other requests to which Block has provided deficient responses, including Interrogatory Nos. 17, 18, 21, 26, and 28 and Written Report Nos. 1 to 3. The Bureau continues to try to work with Block to ensure full responses to those requests are provided.

DECLARATION OF JOYCE CHEN IN SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS
6

counsel, attached as Exhibit G, indicating that information responsive to the relevant requests must be received by August 11, 2022 or the Bureau might file a petition to enforce the CIDs. In response, Block once again – as it has done repeatedly over the course of the last two years – indicated by letter that it would "endeavor" to produce some materials by August 31, 2022.

27. Block has repeatedly "hoped" or "expected" to produce responses or documents at a time "in the near future," by certain deadlines of its own making, and then missed those very deadlines without explanation. After waiting over a year for the production of any information in response to eight different requests, the Bureau cannot rely on Block's tepid assurances any longer.

**The Requests at Issue Are Relevant and Material to the Investigation**

28. The CID requests at issue in the instant action seek information relevant and material to the Bureau's investigation. They are generally described below, as follows:

29. Interrogatory No. 24 requests information regarding rate, number, and amount of chargebacks and Automated Clearinghouse (ACH) returns for Cash App transactions, and is relevant and material to the investigation because it seeks information about, among other things, scope of harm and liability in connection with potential EFTA, Regulation E, and CFPA violations.

30. Interrogatory No. 25 requests information regarding the communications Block has had with financial institutions or card networks regarding the handling, investigating, or monitoring of the Block's chargebacks, ACH return rates, or related metrics, including whether Block was told it was approaching or exceeding any thresholds. This is relevant and material to the investigation because it seeks information

about, among other things, Block's conduct and knowledge associated with potential CFPA violations, at least.

31. Interrogatory No. 27 requests the data points, triggers, and other analyses that Block has used to determine that activity in a Cash App account warrants freezing, suspending, locking, or blocking a transaction. This information is relevant and material to the investigation because it seeks information about, among other things, Block's processes associated with one area that is a focus of the investigation.

32. Interrogatory No. 29 requests that Block identify all individuals who participated in responding to this CID, the current position of each individual, and the specific tasks performed by each individual. This information is relevant and material to the investigation because, among other things, it may assist in the identification of salient witnesses.

33. Document Request Nos. 5 and 6 seek policies, procedures, and training materials relating to how Block has received, handled, and addressed issues, consumer complaints, or disputes regarding errors, unauthorized transfers, blocked or frozen access to consumer accounts, fraud and identity theft, delayed payment transactions, closing or cancellation of accounts, lost or stolen devices, and limitation of consumer liability. This information is relevant and material to the investigation because, among other things, it seeks information about Block's own stated rules and instructions for addressing a number of the areas of focus of the investigation.

34. Document Request No. 13 requests Block's internal and external communications regarding customer service activities, account takeovers, the exceeding of chargeback thresholds set by banks or card networks, and audits or other analyses. This information is relevant and material to the investigation because, among other

things, it seeks information about Block's conduct and knowledge regarding issues of focus in the investigation.

35. Document Request No. 14 requests certain communications of Brian Grassadonia, the CEO of Cash App, relating to specified issues of concern in the investigation, and is relevant and material to the investigation because it provides information about the CEO's involvement and understanding of these issues.

36. Document Request No. 15 requests Slack Channel communications regarding definitions of data fields relating to customer service and disputes, areas of focus of the investigation. This is relevant and material to the investigation because Block has not provided a data dictionary for its data fields, and a Block official testified that the source for such definitions were Slack Channel communications.

37. Document Request No. 18 requests audits, analyses, policies, procedures, and communications regarding chargebacks, customer service activities, and reports generated from spreadsheets used by Block in conducting or tracking customer service activities. This is relevant and material to the investigation because it seeks information about one issue of focus in the investigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 18, 2022

/s/ Joyce Chen
JOYCE CHEN (NY Reg. #4717245)
(Appearing per Local Rule 11-2)
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Phone: (202) 702-4226
Email: joyce.chen@cfpb.gov

# CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2022, I caused a true and correct copy of the document entitled Declaration of Joyce Chen in Support of Petition to Enforce Civil Investigative Demands to be served by e-mail on counsel for Respondent Block, Inc., as follows:

>Allyson Baker, Esq.
>Paul Hastings LLP
>2050 M Street NW
>Washington, D.C. 20036
>allysonbaker@paulhastings.com

/s/ Joyce Chen
JOYCE CHEN (NY Reg. #4717245)
(Appearing per Local Rule 11-2)
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Phone: (202) 702-4226
Email: joyce.chen@cfpb.gov

*Attorneys for Petitioner*
*Consumer Financial Protection Bureau*