# Exhibit D



1700 G Street NW, Washington, D.C. 20552

September 16, 2021

<u>Via Email</u>

Allyson Baker, Esq.
Erin Zacuto Cass, Esq.
Michael Marusak, Esq.
Venable LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
ABBaker@Venable.com
EZCass@Venable.com
MMarusak@Venable.com

RE: <u>Civil Investigative Demand Served on Square, Inc. on August 6, 2021</u>

Dear Ms. Baker, Ms. Cass, and Mr. Marusak:

This letter modifies the terms for compliance with the civil investigative demand (CID) served on August 6, 2021, to Square, Inc. (Square or the Company) by the Consumer Financial Protection Bureau (the Bureau), as permitted by 12 C.F.R. § 1080.6(d). The modifications set forth in this letter are the only modifications to the CID. The Bureau's willingness to approve these additional modifications is based, in part, on the representations Square made at the meet and confer meetings held on August 13, 19, and 20, 2021 and in its letter dated September 2, 2021. The production of information and documents in accordance with the modifications described below constitutes compliance with the CID.

## Modifications to Interrogatories

<u>Interrogatory No. 18:</u> Square represented during the August 13, 2021 meet and confer that there may be numerous ancillary entities with which Square has some relationship for the delivery or offering of any product, service, or feature associated with Cash App, and requests that the scope of this request be limited. Accordingly, the Bureau holds in abeyance Square's obligation to respond with respect to any entities that do not facilitate actions that Square or its agents take:

- To receive, assess, investigate, escalate, and resolve Consumer complaints, disputes, reports, and inquiries involving asserted errors, including but not limited to unauthorized transfers that do not relate to potential fraud or identity theft;
- To receive, assess, investigate, escalate, and resolve Consumer complaints, disputes, and reports involving potential fraud or identity theft, including but not limited to account takeovers;
- To receive, assess, investigate, escalate, and resolve Consumer complaints, disputes, and reports relating to a direct deposit, unemployment insurance deposit, tax refund, or stimulus check deposit, including but not limited to missing deposits;
- To identify and act upon potential fraud or identity theft in any area, including but not limited to potential fraud or identity theft in direct deposit, unemployment insurance deposit, tax refund, or stimulus check deposit;
- To suspend, block, or freeze a Consumer's access to a Cash App account or Cash Card;
- To receive, assess, investigate, escalate, and resolve a Consumer's request to close or cancel a Cash App account or Cash Card that was created without the Consumer's authorization;
- To notify or inform Consumers whose Cash Cards or Cash App accounts have been suspended, blocked, or frozen, or who are suspected victims of fraud (including a suspected account takeover), and to provide such Consumers information regarding the Company's action(s) in response;
- To monitor chargebacks and issues relating to reversals of payments, including debit network push payments, related to Consumer allegations of fraud, identity theft, errors, and unauthorized transactions with regard to the payment(s); and
- To receive, assess, investigate, escalate, and resolve questions related to limitation of liability, refunds, provisional credits, or permanent credits.

The Bureau reserves the right to require a complete response to Interrogatory No. 18 upon notice.

Interrogatory No. 19: Square represented during the August 13, 2021 meet and confer that Square may have numerous accounts for conducting business "related to Cash App," and requests that the scope of Interrogatory No. 19 be limited to accounts that hold customer funds. The Bureau modifies the preamble to Interrogatory No. 19 as follows:

> "Identify all depository and non-depository institutions at which the Company has held accounts that hold Cash App customer funds, and identify and describe each such account at each depository and non-depository institution. For each such institution, state:"

Interrogatory No. 21: Square represented in its September 2, 2021 letter that the response to Interrogatory No. 21 is dependent in part on any modifications to Interrogatory No. 20, and Square requested a modification to the preamble of Interrogatory No. 20. Enforcement staff explained during the August 19, 2021 meet and confer that

Interrogatory No. 21 refers to the activities as described only in subparts (a) to (i) of Interrogatory No. 20, and that the preamble to Interrogatory No. 20 should not be considered in answering Interrogatory No. 21. For clarity, the Bureau modifies the first sentence of Interrogatory No. 21 as follows:

> "Identify and describe the department(s), team(s), queue(s), or group(s) within the Company that primarily handle the following activities:
>
> a. To receive, assess, investigate, escalate, and resolve Consumer complaints, disputes, reports, and inquiries involving asserted errors, including but not limited to unauthorized transfers that do not relate to potential fraud or identity theft;
> b. To receive, assess, investigate, escalate, and resolve Consumer complaints, disputes, and reports involving potential fraud or identity theft, including but not limited to account takeovers;
> c. To receive, assess, investigate, escalate, and resolve Consumer complaints, disputes, and reports relating to a direct deposit, unemployment insurance deposit, tax refund, or stimulus check deposit, including but not limited to missing deposits;
> d. To identify and act upon potential fraud or identity theft in any area, including but not limited to potential fraud or identity theft in direct deposit, unemployment insurance deposit, tax refund, or stimulus check deposit;
> e. To suspend, block, or freeze a Consumer's access to a Cash App account or Cash Card;
> f. To receive, assess, investigate, escalate, and resolve a Consumer's request to close or cancel a Cash App account or Cash Card that was created without the Consumer's authorization;
> g. To notify or inform Consumers whose Cash Cards or Cash App accounts have been suspended, blocked, or frozen, or who are suspected victims of fraud (including a suspected account takeover), and to provide such Consumers information regarding the Company's action(s) in response;
> h. To monitor chargebacks and issues relating to reversals of payments, including debit network push payments, related to Consumer allegations of fraud, identity theft, errors, and unauthorized transactions with regard to the payment(s); and
> i. To receive, assess, investigate, escalate, and resolve questions related to limitation of liability, refunds, provisional credits, or permanent credits."

Interrogatory Nos. 22 and 23: Square represents in its September 2, 2021 letter that the definition of "spreadsheet" in Interrogatory No. 20 is overly broad and requests that the definition of spreadsheet be narrowed to tracker documents that record actions taken by Square relating to activities set forth in subparts (a) to (i) of Interrogatory No. 20. Although the Bureau declines to narrow the definition of spreadsheet, for Interrogatory Nos. 22 and 23 only, the Bureau will hold in abeyance Square's obligation to supply information regarding any database identified in response to Interrogatory No. 20 that does not contain any of the tables requested in Document Request Nos. 19-53. The Bureau

reserves the right to require a complete response to Interrogatory Nos. 22 and 23 upon notice.

**Modifications to Document Requests**

Document Request No. 11: Square's September 2, 2021 letter indicates that it understands Document Request No. 11 to be dependent on the preamble to Interrogatory No. 20. The preamble to Interrogatory No. 20 should not be considered in answering Document Request No. 11. For clarity, the Bureau modifies Document Request No. 11 as follows:

> "An exemplar of all documents that are shared, provided, and/or exchanged between the Company and Marqeta, Sutton Bank, and/or any card network, including but not limited to Visa, Mastercard, Discover, and American Express, in conducting the following activities:
>
> a. To receive, assess, investigate, escalate, and resolve Consumer complaints, disputes, reports, and inquiries involving asserted errors, including but not limited to unauthorized transfers that do not relate to potential fraud or identity theft;
> b. To receive, assess, investigate, escalate, and resolve Consumer complaints, disputes, and reports involving potential fraud or identity theft, including but not limited to account takeovers;
> c. To receive, assess, investigate, escalate, and resolve Consumer complaints, disputes, and reports relating to a direct deposit, unemployment insurance deposit, tax refund, or stimulus check deposit, including but not limited to missing deposits;
> d. To identify and act upon potential fraud or identity theft in any area, including but not limited to potential fraud or identity theft in direct deposit, unemployment insurance deposit, tax refund, or stimulus check deposit;
> e. To suspend, block, or freeze a Consumer's access to a Cash App account or Cash Card;
> f. To receive, assess, investigate, escalate, and resolve a Consumer's request to close or cancel a Cash App account or Cash Card that was created without the Consumer's authorization;
> g. To notify or inform Consumers whose Cash Cards or Cash App accounts have been suspended, blocked, or frozen, or who are suspected victims of fraud (including a suspected account takeover), and to provide such Consumers information regarding the Company's action(s) in response;
> h. To monitor chargebacks and issues relating to reversals of payments, including debit network push payments, related to Consumer allegations of fraud, identity theft, errors, and unauthorized transactions with regard to the payment(s); and
> i. To receive, assess, investigate, escalate, and resolve questions related to limitation of liability, refunds, provisional credits, or permanent credits."

Document Request No. 13: Square's September 2, 2021 letter indicates that Square understands Document Request No. 13 to be dependent on portions of Interrogatory Nos. 17 and 20. That was not intended. For clarity, the Bureau modifies Document Request No. 13 as follows:

> "Communications internally within Square and externally with any entity identified in Interrogatory No. 18 regarding:
>
> a. The activities described only in subparts (a) to (i) of Interrogatory No. 20, not including the preamble, and the procedures, processes, and systems relating to such activities, including without limitation communications concerning the documents provided in response to Document Request No. 12;
> b. The documents provided in response to Document Request No. 18;
> c. Account takeovers;
> d. The handling, investigating, or monitoring of the Company's chargebacks, ACH return rates, or related metrics, including whether the Company was told it was approaching or exceeding any thresholds;
> e. The activities described in subparts (a) to (d) of Interrogatory No. 17, not including the preamble, and the procedures, processes, and systems relating to such activities; and
> f. The manner in which Square would provide customer service to consumers using Cash App."

Document Request No. 18: Square's September 2, 2021 letter indicates that Square understands Document Request No. 18 to be dependent on certain portions of Interrogatory No. 17. That was not intended.

For clarity, the Bureau modifies subparts (d) and (e) of Document Request No. 18 as follows:

> "d. The development, implementation, and adoption of the processes, systems, and procedures described in response to Interrogatory Nos. 17(a) to (d), not including the coda to Interrogatory No. 17; and

> e. The activities described in subparts (a) to (d) of Interrogatory No. 17, not including the preamble or the coda to Interrogatory No. 17."

**Timing of the Production**

Square requested additional time to provide responses to all of the Interrogatories and Document Requests in the CID. In its September 2, 2021 letter, Square proposed a rolling production schedule and represented that its proposed schedule reflects the time needed to compile the information. At the August 13, 2021 meet and confer, Square also represented that information prior to January 1, 2020 (historical period) will take longer to obtain, compared to information dating from January 1, 2020 to present (as of 2020).

Accordingly, the Bureau modifies the time for Square's compliance as follows:

| Production Date | Request Nos. |
|---|---|
| 9/30/2021 | Interrogatory Nos. 17(a)-(c) (as of 2020); 18 (as of 2020); 19 (as of 2020); 21 (as of 2020); 26 (as of 2020); 27 (as of 2020); 28; 29 (to be provided with responses).<br><br>Document Request Nos. 10; 11; 17. |
| 10/22/2021 | Interrogatory Nos. 17(d) (as of 2020); 17(coda) (as of 2020); 20; 21 (historical period); 24; 25; 29 (to be provided with responses).<br><br>Document Request Nos. 9; 15; 18 (all responsive documents that are not communications). |
| 11/5/2021 | Interrogatory Nos. 17(a)-(c) (historical period); 17(d) (historical period); 17(coda) (historical period); 18 (historical period); 19 (historical period); 22; 23; 26 (historical period); 27 (historical period); 29 (to be provided with responses).<br><br>Document Request Nos. 12; 13; 14; 16 (as of 2020); 16 (historical period); 18 (communications); 35-40; 42; 47; 49-50; 52-53. |
| 12/2/2021 | Document Request Nos. 19-34; 41; 43-46; 48; 51. |

Square must fully comply with the CID, as modified, by December 2, 2021. If Square withholds information responsive to the CID based on privilege, it must produce a privilege log in accordance with the procedures set forth in the Rules Relating to Investigations § 1080.8 (Withholding Requested Material). *See* 12 C.F.R. § 1080.8. If required, a privilege log is due on December 2, 2021.

**Nature of the Modifications**

To assist in construing any terms of this letter, the definitions set forth in the CID are incorporated by reference. This letter does not change Square's responsibilities described in the Document Retention instruction in the CID. Further, nothing in this letter precludes the Bureau from issuing additional CIDs to or seeking discovery from Square.

If you have any questions regarding the terms outlined above, contact Enforcement Attorney Joyce Chen at (202) 702-4226 or joyce.chen@cfpb.gov.

Sincerely,

David M. Rubenstein
Deputy Enforcement Director