Exhibit F


Consumer Financial
Protection Bureau

1700 G Street NW, Washington, D.C. 20552

December 16, 2021

<u>Via Email</u>

Allyson Baker, Esq.
Meredith Boylan, Esq.
Erin Zacuto Cass, Esq.
Michael Marusak, Esq.
Michelle Liu, Esq.
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036
<u>allysonbaker@paulhastings.com</u>
meredithboylan@paulhastings.com
<u>erincass@paulhastings.com</u>
<u>michaelmarusak@paulhastings.com</u>
<u>michelleliu@paulhastings.com</u>

RE: <u>Civil Investigative Demand Served on Square, Inc. on August 6, 2021</u>

Dear Ms. Baker, Ms. Boylan, Ms. Cass, Mr. Marusak, and Ms. Liu:

This letter modifies the terms for compliance with the civil investigative demand (CID) served on August 6, 2021, to Square, Inc. (Square or the Company) by the Consumer Financial Protection Bureau (the Bureau), as permitted by 12 C.F.R. § 1080.6(d). The modifications set forth in this letter and the modification letters dated September 16, 2021 and October 22, 2021 are the only modifications to the CID. The Bureau's willingness to approve this additional modification is based, in part, on the representations Square made at the meet and confer meetings held on November 23, 2021 and November 30, 2021, in its letter dated October 15, 2021, and in its emails dated October 25, 2021, November 24, 2021 and December 3, 2021. The production of information and documents in accordance with the modification described below constitutes compliance with the CID.

**Modifications to Document Requests**

<u>Document Request No. 18</u>:  Square represented during the November 24, 2021 meet and confer that this document request is burdensome and overlaps with documents sought in Document Request No. 13, for which a modification was provided to hold in abeyance

email communications outside of certain custodians. Square proposed in its November 24, 2021 email to limit the request to the same custodians as provided for Document Request No. 13.

To relieve any unnecessary burden, the Bureau holds in abeyance Square's obligation to produce in response to Document Request No. 18 any communications that do not include as a recipient, sender, cc, or bcc, the following custodians:

- Dusty Stolp
- David Puldon
- Christopher Skeels
- Daniel Doerr
- Murad Salahi
- Brian Boates
- Ryan Brackney
- Erin Gluck
- Patrick Capstick
- Chris Davis
- Chris Draper
- Sheryl Large
- Ryan Fechte
- Ellen Mauger
- Miles Baker
- Jessica Bullitt
- Owen Jennings
- Conor Walsh
- Dustin Moring
- Brian Grassadonia
- Catherine Card
- James Esposito

The Bureau reserves the right to require a complete response to Document Request No. 18 upon notice.

Document Request Nos. 19-34, 43-46, 48 and 51: Square represented in its October 15, 2021 letter that Document Request Nos. 19-34, 43-46, 48 and 51 are burdensome because production of such Document Requests may require many hours of retrieval, research, scoping, and engineering work. In its December 3, 2021 email, Square represented that it sought to provide data for Written Report No. 2 in Exhibit A as to years 2019 to 2021 by the New Year, and for years 2016 to 2018 by mid-February of 2022. Square also represented that it sought to provide data for Written Report Nos. 1 and 3 as to years 2020 and 2021 in January, and for years 2016 to 2019 as soon as possible thereafter. Based on

the Company's representations, and contingent upon the production of the Written Reports as outlined in Exhibit A according to the timeline below, the Bureau will hold in abeyance Document Request Nos. 19-34, 43-46, 48 and 51. The Bureau reserves the right to require production of Document Request Nos. 19-34, 43-46, 48 and 51 upon notice.

Timeline for Production of Written Reports in Exhibit A

| Production Date | Written Report Nos. |
|---|---|
| 1/3/2022 | 2 (2019-2021) |
| 1/31/2022 | 1 and 3 (2020-2021) |
| 2/14/2022 | 1 and 3 (2016-2019) |
| 2/14/2022 | 2 (2016-2018) |

## Modifications to Interrogatory Nos. 22 and 23

Interrogatory Nos. 22 and 23: Square requested in its October 25, 2021 email that Interrogatory Nos. 22 and 23, as modified by the Bureau's September 16, 2021 modification letter, be held in abeyance pending the response to Interrogatory No. 20 and continued discussion regarding Document Request Nos. 19-34, 43-46, 48, and 51. According to the Bureau's September 16, 2021 modification letter, Square's obligation to supply information in response to Interrogatory Nos. 22 and 23 regarding any database identified in response to Interrogatory No. 20 that does not contain any of the tables requested in Document Request Nos. 19-53 was held in abeyance. During the meet and confer meeting on November 23, 2021, Square represented that production of the responses to Interrogatory Nos. 22 and 23 relating to the tables requested in Document Request Nos. 19-34, 43-46, 48 and 51 would be burdensome and time-consuming.

Based on the Company's representations, the Bureau further modifies Interrogatory Nos. 22 and 23 to additionally hold in abeyance Square's obligation to supply information regarding any database identified in response to Interrogatory No. 20 that contains the tables requested in Document Request Nos. 19-34, 43-46, 48 and 51, contingent upon the production of information regarding any database identified in response to Interrogatory No. 20 that contains the tables from which the data in the Written Reports in Exhibit A derive. The Bureau reserves the right to require production of the remainder of Interrogatory Nos. 22 and 23 upon notice.

Timeline for Production of Interrogatory Nos. 22 and 23

| Production Date | Interrogatory Nos. 22 and 23 |
|---|---|
| 11/5/2021 | Responses regarding any database identified in response to Interrogatory No. 20 that contains the tables requested in Document Request Nos. 35-42,47,49,50.*<br>*Some of these Document Requests have yet to be produced. |
| 1/3/2022 | Responses regarding any database identified in response to Interrogatory No. 20 that contains the tables from which Written Report No. 2 (2019-2021) in Exhibit A derives. |
| 1/31/2022 | Responses regarding any database identified in response to Interrogatory No. 20 that contains the tables from which Written Report Nos. 1 and 3 (2020-2021) in Exhibit A derives. |
| 2/14/2022 | Responses regarding any database identified in response to Interrogatory No. 20 that contains the tables from which Written Report Nos. 1 and 3 (2016-2019) in Exhibit A derives. |
| 2/14/2022 | Responses regarding any database identified in response to Interrogatory No. 20 that contains the tables from which Written Report No. 2 (2016-2018) in Exhibit A derives. |

## Nature of the Modifications

To assist in construing any terms of this letter, the definitions set forth in the CID are incorporated by reference. This letter does not change Square's responsibilities described in the Document Retention instruction in the CID. Further, nothing in this letter precludes the Bureau from issuing additional CIDs to or seeking discovery from Square.

If you have any questions regarding the terms outlined above, contact Enforcement Attorney Joyce Chen at (202) 702-4226 or joyce.chen@cfpb.gov.


Sincerely,



David M. Rubenstein
Deputy Enforcement Director

**EXHIBIT A**

**Requests for Written Reports**

Produce the following data in tab-delimited text files, using double-quote-escaped text fields when necessary. Where data derives from separate tables or dimensions, use a separate text file for data elements along each separate dimension. This should comply with at least the first normal form (1NF). Include both unique identifiers, primary keys, and foreign keys (i.e., all fields used to perform joins between tables) in each file expressing the relationship between these files. When data is available for some records and not others, leave the unavailable data items blank (omissions due to unavailability should be identified and discussed during the meet and confer process and described in narrative with the production). Individual records should never be of varying lengths. Where information exists at the record level requested but is not included in the individual Written Report Request, you are expected to include this information in additional columns in your response to the written report. Produce the source code for all scripts used to query data responsive to each Request for Written Report. If the data is converted from its native format to comply with the format requirements, please provide the file from which it was derived.

1. For Cash App accounts for which a Consumer made a complaint, dispute, or report regarding an unauthorized transfer in a peer to peer payment during the Applicable Period, provide all data at the level of each reported unauthorized transfer, including the following:
   a. Unique identifier for the Consumer associated with the account;
   b. Unique identifier for the Consumer account as used by the Company;
   c. Unique identifier of the complaint or dispute;
   d. Unique identifier of the unauthorized transfer (i.e. each complaint or dispute can contain multiple unauthorized transfers);
   e. An indicator (Y/N) whether the Company (or another entity on behalf of the Company) conducted an error resolution investigation regarding the unauthorized transfer described in subpart (d);
   f. An indicator (Y/N) whether the Company reported the results of any investigation to the Consumer;
   g. Amount of unauthorized transfer claimed by Consumer;
   h. Date the unauthorized transfer occurred;
   i. Date that the Consumer provided notification of the unauthorized transfer;
   j. Date that the Company began its error resolution investigation regarding the unauthorized transfer described in subpart (d), if applicable;
   k. Date that the Company determined whether an unauthorized transfer occurred;
   l. Date the Company reported the results of any investigation to the Consumer;

m. An indicator (Y/N) whether the Company notified the Consumer of their right to request the documents that the institution relied on in making its determination;

n. Amount of provisional credit provided to the Consumer for the unauthorized transfer, if applicable;

o. Date that the provisional credit was provided to Consumer, if applicable;

p. Amount refunded to the Consumer for the unauthorized transfer, if applicable;

q. An indicator (Y/N) whether the unauthorized transfer resulted from identity theft;

r. An indicator (Y/N) whether the unauthorized transfer was associated with loss or theft of Consumer's phone;

s. An indicator (Y/N) whether the unauthorized transfer was a result of an account takeover; and

t. All macros that the Company sent to the Consumer.

2. For Cash Cards issued in connection with Cash App and for which a Consumer made a complaint, dispute, or report regarding an unauthorized transfer on the Cash Card during the Applicable Period, provide all data at the level of each reported unauthorized transfer, including the following:

a. Unique identifier for Consumer associated with the Cash Card;

b. Unique identifier for the Consumer account as used by the Company;

c. Unique identifier for the Consumer account as used by Marqeta (if different);

d. Unique identifier of the complaint or dispute;

e. Unique identifier of the unauthorized transfer (i.e. each complaint or dispute can contain multiple unauthorized transfers);

f. An indicator (Y/N) whether the Company (or another entity on behalf of the Company) conducted an error resolution investigation regarding the unauthorized transfer described in subpart (e);

g. An indicator (Y/N) whether the Company reported the results of any investigation to the Consumer;

h. Amount of unauthorized transfer claimed by Consumer;

i. Date the unauthorized transfer occurred;

j. Date that the Consumer provided notification of the unauthorized transfer;

k. Date that the Company began its error resolution investigation regarding the unauthorized transfer described in subpart (e), if applicable;

l. Date that the Company determined whether an unauthorized transfer occurred;

m. Date the Company reported the results of any investigation to the Consumer;

n. An indicator (Y/N) whether the Company notified the Consumer of their right to request the documents that the institution relied on in making its determination;

o. Amount of provisional credit provided to the Consumer by the Company for the unauthorized transfer, if applicable;

p. Date that the Company provided provisional credit to Consumer, if applicable;

q. Amount refunded to the Consumer for the unauthorized transfer, if applicable;

r. An indicator (Y/N) whether the unauthorized transfer resulted from identity theft;

s. An indicator (Y/N) whether the unauthorized transfer was associated with loss or theft of Consumer's Cash Card or phone;

t. An indicator (Y/N) whether the unauthorized transfer was a result of an account takeover; and

u. All macros that the Company sent to the consumer.

3. For Cash App accounts for which a Consumer made a complaint, dispute, or report regarding an unauthorized transfer that was not a Cash Card or peer to peer payment transaction, provide all data at the level of each reported unauthorized transfer, including the following:

a. Unique identifier for the Consumer associated with the account;

b. Unique identifier for the Consumer account as used by the Company;

c. Unique identifier of the complaint or dispute;

d. Unique identifier of the unauthorized transfer (i.e. each complaint or dispute can contain multiple unauthorized transfers);

e. An indicator (Y/N) whether the Company (or another entity on behalf of the Company) conducted an error resolution investigation regarding the unauthorized transfer described in subpart (d);

f. An indicator (Y/N) whether the Company reported the results of any investigation to the Consumer;

g. Amount of unauthorized transfer claimed by Consumer;

h. Date the unauthorized transfer occurred;

i. Date that the Consumer provided notification of the unauthorized transfer;

j. Date that the Company began its error resolution investigation regarding the unauthorized transfer described in subpart (d), if applicable;

k. Date that the Company determined whether an unauthorized transfer occurred;

l. Date the Company reported the results of any investigation to the Consumer;

m. An indicator (Y/N) whether the Company notified the Consumer of their right to request the documents that the institution relied on in making its determination;

n. Amount of provisional credit provided to the Consumer for the unauthorized transfer, if applicable;

o. Date that the provisional credit was provided to Consumer, if applicable;

p. Amount refunded to the Consumer for the unauthorized transfer, if applicable;

q.  An indicator (Y/N) whether the unauthorized transfer resulted from identity theft;

r.  An indicator (Y/N) whether the unauthorized transfer was associated with loss or theft of Consumer's phone;

s.  An indicator (Y/N) whether the unauthorized transfer was a result of an account takeover; and

t.  All macros that the Company sent to the Consumer.