JOYCE CHEN (NY Reg #4717245)
Tel.: (202) 702-4266 / Email: joyce.chen@cfpb.gov
SARAH BALDWIN (NY Reg #5414248)
Tel.: (202) 480-6912 / Email: sarah.baldwin@cfpb.gov
1700 G Street, NW
Washington, D.C. 20552

*Attorneys for Petitioner*
*Consumer Financial Protection Bureau*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, <br><br> Petitioner, <br><br> v. <br><br> BLOCK, INC., <br><br> Respondent. | Case No.  22-mc-80214-SK <br><br> **REPLY MEMORANDUM IN FURTHER SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

I. The CIDs must be enforced because the Bureau meets the three-part test for enforcement and Block cannot prove the Bureau's inquiry is unreasonable. ........................ 1

   A. Block cannot argue that the CID Requests are unduly burdensome because it did not exhaust administrative remedies. ................................................................... 2

   B. Even if Block hadn't waived its undue burden argument, Block fails to demonstrate undue burden as to any Request for which the Bureau seeks enforcement. ....................... 4

II. The Court should enforce the CID because Block's production is deficient. ............... 8

III. Conclusion ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*1443 Chapin St., LP v. PNC Bank, N.A.*,
   810 F. Supp. 2d 209 (D.D.C. 2011) ................................................................ 2

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F. 3d 912 (9th Cir. 2001) ......................................................................... 6

*CFPB v. Educ. Credit Mgmt. Corp. (ECMC)*,
   21-mc-00019 (SRN/DTS), 2022 WL 102275 (D. Minn. Jan. 11, 2022) ........ 8, 11

*CFPB v. Future Income Payments*,
   252 F.Supp.3d 961 (C.D. Cal. 2017) .............................................................. 6

*CFPB v. Great Plains Lending, LLC*,
   846 F.3d 1049 (9th Cir. 2017) ........................................................................ 4

*CFPB v. Great Plains Lending, LLC*,
   No. CV142090MWFPLAX, 2014 WL 12685941 (C.D. Cal. May 27, 2014) ........ 4, 6

*CFPB v. Heartland Campus Solutions., ECSI*,
   747 F. App'x 44 (3d Cir. 2018) ....................................................................... 3

*CFTC v. Collins*,
   997 F.2d 1230 (7th Cir. 1993) ........................................................................ 5

*CFTC v. First State Depository Co., LLC*,
   No. 21-mc-048 (JEB/GMH), 2021 WL 7448016 (D.D.C. June 23, 2021) ........ 2

*EEOC v. Fed. Exp. Corp.*,
   558 F.3d 842 (9th Cir. 2009) .......................................................................... 1

*EEOC v. McLane Co.*,
   581 U.S. 72 (2017) .......................................................................................... 4

*EEOC v. McLane Co.*,
   804 F.3d 1051 (9th Cir. 2015) ........................................................................ 4

*FDIC v. Garner*,
    126 F.3d 1138 (9th Cir. 1997) .................................................................................. 2, 6

*FTC v. Complete Merch. Solutions, LLC*,
    No. 2:19-cv-00996-HCN-EJF, 2020 WL 2059847 (D. Ut. Apr. 28, 2020) .......................... 3

*FTC v. O'Connell Assocs., Inc.*,
    828 F. Supp. 165 (E.D.N.Y. 1993) ................................................................................ 3

*FTC v. Tracers Info. Specialists, Inc.*,
    No. 8:16-MC-18TGW, 2016 WL 3896840 (M.D. Fla. June 10, 2016) .............................. 3

*In Re Civil Investigative Demand*,
    No. 21mc24 WJ/SCY, 2021 WL 5200217 (D. New Mexico Nov. 9, 2021) ........................ 7

*Marshall v. Burlington N.'ern, Inc.*,
    595 F.2d 511 (9th Cir. 1979) .......................................................................................... 3

*NLRB v. Fresh & Easy Neighborhood Mkt., Inc.*,
    805 F.3d 1155 (9th Cir. 2015) ........................................................................................ 4

*NLRB v. N. Bay Plumbing, Inc.*,
    102 F.3d 1005 (9th Cir. 1996) .................................................................................... 6, 7

*NLRB v. Vista Del Sol Health Servs., Inc.*,
    40 F.Supp.3d 1238 (C.D. Cal. 2014) ........................................................................... 6, 7

*United States v. ASG Solutions Corp.*,
    No.: 17CV1224 L (BGS), 2018 WL 1418023 (S.D. Cal. Mar. 22, 2018) ...................... 8, 11

*United States v. Coinbase, Inc.*,
    No. 17-cv-01431-JSC, 2017 WL 5890052 (N.D. Cal. 2017) .............................................. 5

*United States v. Fischer*,
    993 F. Supp. 2d 238 (E.D.N.Y. 2013) ............................................................................. 2

*United States v. Picetti*,
    No. 2:19-cv-0049 KJM AC, 2019 WL 1895057 (E.D. Cal. April 29, 2019) ........................ 1

*United States. v. Golden Valley*,

   689 F.3d 1108 (9th Cir. 2012) ............................................................................................. 1

*Walsh v. Katsilometes*,

   No. 20-36002, 2021 WL 4811376 (9th Cir. Oct. 15, 2021) .................................................. 5

**Statutes**

12 U.S.C. § 5562(e)(1) ................................................................................................................. 8

12 U.S.C. § 5562(f) ...................................................................................................................... 3

12 U.S.C. § 5562(f)(1) ................................................................................................................. 4

15 U.S.C. § 57b-1(f) .................................................................................................................... 3

**Regulations**

12 C.F.R. § 1005.10(e) ................................................................................................................ 5

12 C.F.R. § 1005.3(c)(7) ............................................................................................................. 5

12 C.F.R. § 1080.10(a) ................................................................................................................ 8

12 C.F.R. § 1080.10(b)(1) ........................................................................................................... 8

12 C.F.R. § 1080.6(c) .................................................................................................................. 2

12 C.F.R. § 1080.6(c)(1) ............................................................................................................. 8

12 C.F.R. § 1080.6(c)(2) ............................................................................................................. 8

# INTRODUCTION

The Bureau duly served two CIDs on Block, and despite its protests to the contrary, Block has not complied with them. While Block claims that the Court could act on arguments of undue burden despite its failure to file petitions to modify or set aside the CIDs, it does not offer any specifics to support such arguments; to the contrary, Block says that it does not seek to have the court modify or quash the CIDs at all. Instead, Block claims that it has substantially complied with the CIDs with its production of 150,000 documents. But it has not. Most of Block's production is comprised of non-substantive, repetitive process emails. Having failed to produce at least 400 emails of substance produced by third parties, it is apparent that Block is withholding the materials salient to this investigation and attempting to deluge the Bureau with useless paper. Rather than comply, Block has responded to the Bureau's CIDs with delay and obfuscation. The Court should reject Block's gamesmanship and require it to make complete production to Interrogatory Nos. 24, 25, 27, and 29, and Document Request Nos. 5, 6, 13, 14, 15, and 18.

# ARGUMENT

**I. The CIDs must be enforced because the Bureau meets the three-part test for enforcement and Block cannot prove the Bureau's inquiry is unreasonable.**

In its opening brief, the Bureau demonstrated that it met the "narrow" three-part test for CID enforcement: "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (citations omitted). Block did not contest the Bureau's showing.[1] Because Block

---

[1] Block did not even attempt to contest the Bureau's showing of relevancy, because relevancy is a low bar that is hard to contest. *See United States v. Picetti*, No. 2:19-cv-0049 KJM AC, 2019 WL 1895057, at *5 (E.D. Cal. April 29, 2019) (finding that third prong of relevancy was met and noting that Petitioner did not contest relevancy nor could he); *United States. v. Golden Valley*, 689 F.3d 1108, 1113 (9th Cir. 2012) (internal citations omitted), (upholding court's enforcement of subpoena seeking broad, generalized information about energy consumption in a criminal matter).

1

Case No. 3:22-mc-80214-SK

BUREAU'S REPLY IN FURTHER SUPPORT
OF PETITION TO ENFORCE CIVIL
INVESTIGATIVE DEMANDS

1  did not address these factors, Block has conceded the CIDs at issue meet these requirements.

2  *See CFTC v. First State Depository Co., LLC*, No. 21-mc-048 (JEB/GMH), 2021 WL

3  7448016, at *5 (D.D.C. June 23, 2021) (recommending enforcement of administrative

4  subpoena and citing *United States v. Fischer*, 993 F. Supp. 2d 238, 243-44 (E.D.N.Y. 2013)

5  ("respondent to an administrative subpoena had conceded its enforceability by failing to

6  address the relevant factors") and *1443 Chapin St., LP v. PNC Bank, N*.A., 810 F. Supp. 2d

7  209, 222 n. 12 (D.D.C. 2011) ("a court may treat as conceded arguments raised in a motion

8  that are not addressed in the opposition.") (internal citations and quotations omitted)).

9       As the Bureau satisfied the three-part test, the CIDs "should be enforced unless the

10  party being investigated proves the inquiry is unreasonable because it is overbroad or unduly

11  burdensome." *FDIC v. Garner*, 126 F.3d 1138, 1143 (9th Cir. 1997). Block cannot prove this

12  because 1) it never petitioned to modify or set aside the CIDs on this basis;[2] and 2) it fails to

13  provide any proof that the CIDs are overbroad or unduly burdensome, much less articulate

14  what specific Request (or even specific aspect of a Request) is overbroad or unduly

15  burdensome. On the contrary, Block has indicated in its most recent filing that it "has not

16  asked the Court to modify or quash the CIDs, or stated that it does not intend to comply with

17  them." *See* Opp. Br., at 3 n. 2 (ECF No. 21).

18
19      **A. Block cannot argue that the CID Requests are unduly burdensome because it did not exhaust administrative remedies.**

20       Block claims that because the Consumer Financial Protection Act uses "permissive"

21  language regarding the filing of petitions to modify or set aside, it was never required to first

22  seek such remedies before arguing undue burden before this court. But courts have ruled that,

23  before raising issues in court, a person challenging agency action must generally exhaust

---

[2] The process of negotiating alterations to a CID through a meet-and-confer under 12 C.F.R. § 1080.6(c) is a pre-requisite to a party's statutory right to petition the Bureau to set aside or modify a CID . Through the meet-and-confer process, the Bureau issued three letters granting some changes; the Petition refers to them as "modification letters", not to be confused with a petition to modify. *See* Exhibits E, F, and G, attached to Chen Pet. Decl. (ECF. No. 2). The meet-and-confer process does not exhaust administrative remedies.

administrative remedies—regardless of whether a statute discussing agency procedures expressly requires exhaustion or even exists. *See Marshall v. Burlington N.'ern, Inc.*, 595 F.2d 511, 513 (9th Cir. 1979) (applying administrative exhaustion principle to require that issue first be raised with Occupational Safety and Health Review Commission, not because of a statutory requirement but based on general principles of administrative law). Indeed, the exhaustion requirement applies to CIDs issued by the Federal Trade Commission (FTC), which has a process very similar to the Bureau's.[3] *FTC v. Tracers Info. Specialists, Inc.*, No. 8:16-MC-18TGW, 2016 WL 3896840, at *4 (M.D. Fla. June 10, 2016) (finding respondent's "failure to comply with the administrative procedure provided by the statute and the implementing regulations bars its assertion of substantive objections to the CID in court"); *FTC v. O'Connell Assocs., Inc.*, 828 F. Supp. 165, 168 (E.D.N.Y. 1993). Thus, recipients of Bureau CIDs should be required to exhaust the administrative process as well.

Block's actions amount to the "frequent and deliberate flouting of administrative processes" that courts caution against in requiring administrative exhaustion. *See FTC v. Complete Merch. Solutions, LLC*, No. 2:19-cv-00996-HCN-EJF, 2020 WL 2059847, at *8 (D. Ut. Apr. 28, 2020) (stating that such flouting "could weaken the effectiveness of an agency by encouraging people to ignore its procedures.") (internal citations omitted).[4] Block

---

[3] The FTC's procedure for challenging a CID for being overbroad or unduly burdensome is virtually identical to that of the Bureau. *See* 12 U.S.C. § 5562(f) (providing that "[n]ot later than 20 days after the service of any civil investigative demand…[a respondent] may file with the Bureau a petition for an order by the Bureau modifying or setting aside the demand."). *Compare with* 15 U.S.C. § 57b-1(f) (providing that "[n]ot later than 20 days after the service of any civil investigative demand…[a respondent] may file. . . a petition for an order by the Commission modifying or setting aside the demand."). The FTC's statutory language that a respondent "may" file a petition to modify or set aside the demand did not preclude courts from ruling that administrative exhaustion was required. *See Complete Merch. Sols., LLC*, 2020 WL 2059847; *Tracers Info. Specialists, Inc.*, 2016 WL 3896840.

[4] Allowing entities to bypass administrative procedures would encourage parties to ignore regulatory procedures, which would then minimize the administrative role of agencies, the intent of the statute and implementing regulations, and the expertise of the agency with respect to relevance and particularity to which courts defer. *See Complete Merch. Solutions., LLC,* 2020 WL 2059847, at *8. *See also CFPB v. Heartland Campus Solutions., ECSI*, 747 F. App'x 44 (3d Cir. 2018) ("[J]udicial supervision of agency decisions to investigate might hopelessly entangle the courts in areas that would prove to be unmanageable and would

ignored most regulatory deadlines and made half-efforts at everything, producing just enough to be able to argue that it was attempting to comply, yet dragging out and failing to provide *any* email communications until one year later, *after* the Bureau filed its Petition. Chen Decl. ¶¶ 9, 12, 22, 34. Such actions impede the Bureau's ability to obtain information pursuant to its statutory authority. To prevent such delay tactics, the CFPA provides only 20 days for an entity to petition to modify or set aside the CID. *See* 12 U.S.C. § 5562(f)(1). It would be absurd, in light of this statutorily provided timeframe and the principle of administrative exhaustion, for a party to fail to petition to modify or set aside, but then be able to argue that certain CID requests should not be enforced based on undue burden. It would be even more absurd if a party can make these arguments after delaying production for over a year, and being provided several accommodations by the Bureau during that time. *See* Chen Decl. ¶ 16.

Because Block failed to avail itself of the process prescribed by Congress to petition to set aside or modify the CID, Block has waived any argument that the CID is unreasonable because of undue burden.

> **B. Even if Block hadn't waived its undue burden argument, Block fails to demonstrate undue burden as to any Request for which the Bureau seeks enforcement.**

Even if Block could argue undue burden here, it does not provide any evidence to support such an argument. It is Block's burden to prove that the Requests are overbroad or unduly burdensome, *EEOC v. McLane Co.*, 804 F.3d 1051, 1056 (9th Cir. 2015), *vacated on other grounds*, 581 U.S. 72 (2017), and the burden of making such a showing is "not easily met." *CFPB v. Great Plains Lending, LLC*, No. CV142090MWFPLAX, 2014 WL 12685941, at *17 (C.D. Cal. May 27, 2014), *aff'd*, 846 F.3d 1049 (9th Cir. 2017). Indeed, it would have to show that responding to the ten Requests at issue would "unduly disrupt or seriously

---

certainly throw great amounts of sand into the gears of the administrative process."); *NLRB v. Fresh & Easy Neighborhood Mkt., Inc*., 805 F.3d 1155, 1162-1164 (9th Cir. 2015).

hinder normal operations of [its] business." *Id.* Block, with revenues of over $17 billion last year, does not come close to meeting the legal standards for a challenge of this sort. Block cites to no example of actual undue burden as to any of the Requests at issue, but merely refers generally to "confusing" subparts,[5] Opp. Br., at 3, 7 (ECF No. 21), and extensive requests in the entire CID, without any evidence.[6] Block's argument conflates complexity with confusion, which does not provide a basis to deny the Petition. And the types of questions for which Block sought clarity regarded such simple words that it appeared more a strategic move to justify delay than actual confusion. For example, during meet and confers between the Bureau and Block on September 23, 2022 and October 17, 2022, Block sought the Bureau's definition of "automatic," "accessibility," and "availability." Chen Decl. ¶ 21.

Block's general complaints that it characterizes as burden are part and parcel of the CID obligations for any investigated entity. *See* Opp. Br., at 12 (ECF No. 21) (complaining generally that Block experiences a "substantial burden" due to the fact that the CID requires it to interpret the many Requests, "research and prepare written responses, collect the data and documents sought, and produce responsive information in a usable format."). Block even complains that, even though it has had over one year to finish production in response to the

---

[5] Block's claimed confusion about CID Requests that cross-reference other Requests is odd given that Regulation E, with which Block is required to comply, also includes sections that reference other sections or subparts. *See, e.g.*, 12 C.F.R. § 1005.3(c)(7), which references § 1005.10(e).

[6] Block's arguments that the Bureau's CIDs are a fishing expedition, Opp. Br., at 8-9 (ECF No. 21), are unsupported by any evidence, and the cases it cites are inapposite. In one, the court indicated it did not have enough information about the investigation to make a determination about whether there was a "fishing expedition" because the Department of Labor had sought an "extensive range of documents without identifying the scope or purpose of its investigation, beyond merely stating that WHD was investigating "whether any person had violated or was violating any provision of the Fair Labor Standards Act." *Walsh v. Katsilometes*, No. 20-36002, 2021 WL 4811376, at *1 (9th Cir. Oct. 15, 2021). The Bureau, in contrast, has provided a detailed notice of purpose. The other cases relate to the sensitivity of tax documents. *CFTC v. Collins*, 997 F.2d 1230, 1234 (7th Cir. 1993) (reversing the district court's enforcement of subpoenas seeking to compel an individual's tax returns, recognizing the public policy against unnecessary public disclosure of tax returns, by an agency enforcing regulatory programs unrelated to tax collection itself, because the agency did not show that the returns contained information directly relevant to the investigation); *United States v. Coinbase, Inc.*, No. 17-cv-01431-JSC, 2017 WL 5890052, at *7 (N.D. Cal. 2017) (granting in part and denying in part a John Doe summons by the IRS seeking personal information of about 14,000 Coinbase accountholders, for the purposes of investigating individuals' failures to report virtual currency gains).

5

Case No. 3:22-mc-80214-SK

BUREAU'S REPLY IN FURTHER SUPPORT
OF PETITION TO ENFORCE CIVIL
INVESTIGATIVE DEMANDS

1  2021 CID, this was difficult because it had to engage in other activities typically required of
2  other entities being investigated by the Bureau. *Id.* (complaining that Block's response to the
3  CIDs "frequently was disrupted" by responding to the Bureau's additional demands for
4  materials, testimony, and serial follow-up requests for information."). But in light of Block's
5  stone walling and slow walking, the Bureau had no other option to obtain information for its
6  investigation and to investigate possible deficiencies than to take testimony and send
7  deficiency letters. The Bureau's investigative powers would be significantly hampered if the
8  Court held such activities were too burdensome.

9        Block's arguments about the extensive nature of the Requests do not prove they are
10 burdensome, either. *See* Opp. Br., at 3, 9, 12 (ECF No. 21) (complaining of numerous
11 subparts). The extensiveness of an administrative subpoena has no bearing on the question of
12 undue burden without additional evidence indicating so. *FDIC v. Garner*, 126 F.3d 1138,
13 1145–46 (9th Cir. 1997) (affirming court's enforcement of subpoena even though the FDIC's
14 requests are extensive, and refusing to hold that the subpoenas "are overbroad or unduly
15 burdensome absent a showing by Appellants of additional support for this position."). *See
16 also NLRB v. Vista Del Sol Health Servs., Inc.*, 40 F.Supp.3d 1238, 1265–66 (C.D. Cal.
17 2014). Block's generalized arguments on complexity or extensiveness demonstrate nothing,
18 because "arguments in briefs are not competent evidence." *Vista Del Sol Health Servs., Inc.*,
19 40 F. Supp. 3d at 1265 (citing *NLRB v. N. Bay Plumbing, Inc.,* 102 F.3d 1005, 1007 (9th Cir.
20 1996)); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F. 3d 912, 923 (9th Cir.
21 2001).

22       Block has not only failed to provide any evidence but it also does not even attempt to
23 argue that it meets the high standard of demonstrating undue burden, because Block cannot
24 show that responding to the ten Requests would "unduly disrupt or seriously hinder normal
25 operations of [its] business." *Great Plains Lending, LLC*, 2014 WL 12685941, at *17. *See
26 also CFPB v. Future Income Payments*, 252 F.Supp.3d 961, 970 (C.D. Cal. 2017), *vacated in*

27

28

Case No. 3:22-mc-80214-SK

BUREAU'S REPLY IN FURTHER SUPPORT
OF PETITION TO ENFORCE CIVIL
INVESTIGATIVE DEMANDS

*part on other grounds*, (internal citations and quotations omitted) (rejecting undue burden argument because respondent failed to provide evidence "such as a declaration specifying the estimated cost of compliance, the effect of compliance on company operations, the number of responsive documents, or some other indication of the burden of complying."); *Vista Del Sol Health Servs., Inc.*, 40 F. Supp. 3d at 1265 (citing *N. Bay Plumbing, Inc.*, 102 F.3d 1005 at 1007 (holding that even if a respondent had shown "it would have to pay overtime or hire temporary workers to comply with the subpoena, it would also have had to show what the likely costs of doing so would be and that paying such costs would seriously disrupt or threaten its business to demonstrate that the subpoena is overbroad."). Block cannot show undue burden because it is an extremely large and highly sophisticated financial technology company, and the Bureau's Requests could not possibly disrupt or threaten it.

      In fact, the Bureau, over the course of multiple months, revised the Requests significantly to reduce scope and any purported burdens. Chen Pet. Decl. ¶ 19 (ECF No. 2). The Bureau even limited certain Requests to particular custodians where Block failed to suggest appropriate custodians after the Bureau asked Block to provide custodians several times. Chen Decl. ¶ 31. Block does not address why, with such revisions, the Requests are burdensome. *See In Re Civil Investigative Demand*, No. 21mc24 WJ/SCY, 2021 WL 5200217, at *4 (D. New Mexico Nov. 9, 2021) (rejecting undue burden argument where the United States offered a significantly revised demand as accommodation, and respondent's evidence did not address why that accommodation remained unduly burdensome). Aside from referencing the Federal Rules of Civil Procedure, which, as it must, Block acknowledges has no applicability to CID enforcement, Block does not offer anything to support a finding that these requests are unreasonable.

**II. The Court should enforce the CID because Block's production is deficient.**

Since Block has failed to provide any cognizable argument or evidence that the Requests are unenforceable as they stand, and as Block's production remains deficient, the Court should enforce the Requests. Block has not substantially complied, despite its claim to the contrary.[7] Block tries to argue that it should be immune to CID enforcement merely because it has produced *some* documents (and plans to produce more); but courts routinely enforce administrative subpoenas where the responding party claims it is still producing. *See, e.g.*, *CFPB v. Educ. Credit Mgmt. Corp. (ECMC)*, 21-mc-00019 (SRN/DTS), 2022 WL 102275 (D. Minn. Jan. 11, 2022) (adopting Order enforcing CIDs where respondent withheld just 70 emails); *United States v. ASG Solutions Corp.*, No.: 17CV1224 L (BGS), 2018 WL 1418023 (S.D. Cal. Mar. 22, 2018) (recommending enforcement of CID, where Respondent produced 15,000 documents after Petition was filed, claimed compliance was complete or nearly complete, but had not offered a certificate of compliance as required by the CID). A Bureau action to enforce a CID lies when a CID recipient has failed to comply with a CID "in whole *or in part*" by the CID return date (or any extension thereof). 12 U.S.C. § 5562(e)(1); 12 C.F.R. §§ 1080.10(a), (b)(1) (emphasis added).

Block does not dispute that its production is incomplete. Not only has Block failed to produce at least 400 emails third parties provided (indicating that Block has failed to produce much more), and at least 200 policy, procedure, and training documents, but Block has also failed to provide a Certificate of Compliance for either the 2020 or 2021 CID, among

---

[7] Block's representations regarding its "compliance" tell only half the story. The only reason Block has made "dozens of productions" is because most productions were late and incomplete, thereby necessitating multiple additional productions of less than 16 documents each. Chen Decl. ¶ 17. Similarly, Block did not provide its list of ESI search terms until over five months after the Bureau issued the CID. Chen Decl. ¶ 37. Block argues that it initiated multiple meetings with the Bureau but fails to discuss that the multiple meetings were necessitated by Block's failure to initially provide proper personnel at the meetings, as required by the Bureau's regulations, 12 C.F.R. § 1080.6(c)(1), or to be knowledgeable about its ESI methods of retrieval, 12 C.F.R. § 1080.6(c)(2). Chen Pet. Decl. ¶ 12 (ECF No. 2). Block argues that it produced millions of lines of data, but omits the fact that Block failed to provide *any* data for certain issues being investigated such as whether Block provided provisional credits to consumers disputing unauthorized peer to peer transactions. Chen Decl. ¶ 18.

numerous other deficiencies. Chen Decl. ¶¶ 12, 13, 27-29, 33, 38, 39. Until the Bureau filed the Petition, it had produced zero documents responsive to eight of the ten Requests at issue. And although Block claims that it will produce more at some time in the future, the Bureau has heard that story from Block before. *Id.* ¶¶ 8, 16.

To the Bureau's dismay, none of the Requests the Bureau seeks to enforce were made moot by Block's post-Petition production:

- The only two Requests for which Block states it has completed production (i.e., Interrogatory Nos. 27 and 29) are still outstanding as to particular portions of the Requests. Chen Decl. ¶¶ 24, 25. Interrogatory No. 27 generally requests the data points, triggers, and other analyses that Block has used to determine that activity in a Cash App account warrants freezing, suspending, locking, or blocking a transaction. Block responded only to the subparts of this request. Chen Decl. ¶ 24. Interrogatory No. 29 requests that Block identify all individuals who participated in responding to this CID, the current position of each individual, and the specific tasks performed by each individual. Block's response was deficient because it failed to provide the "specific tasks performed by each individual." Chen Decl. ¶ 25.
- Block's response to Interrogatory No. 24 remains deficient because it fails to provide data for the majority of the year 2016 as to Cash App's Cash Card. Chen Decl. ¶ 21.
- Block's response to Interrogatory No. 25 is deficient because it did not include references to numerous emails, including, at the very least, emails that the Bureau received from other entities that would be responsive to this Interrogatory. Chen Decl. ¶¶ 22, 23.
- With respect to Document Request Nos. 13, 14, and 18, the Bureau knows from third party productions that Block failed to produce at least 400 emails.

       Chen Decl. ¶¶ 12, 18, 34. These emails relate to Block's handling of consumer disputes and Regulation E issues, which are the subject of the Bureau's investigation. Chen Decl. ¶ 2. Instead of producing these and other similar emails of substance, Block has instead flooded the Bureau with tens of thousands of processing emails that appear to be auto-generated. Chen Decl. ¶ 18, 22. *See, e.g.*, Exhibit B, attached.

- Block has not produced any documents responsive to Document Request No. 15, Chen Decl. ¶ 31, 36 - 38, which seeks Slack communications regarding definitions of data fields relating to customer service and disputes. The Bureau sought this information because Block refused to provide data dictionaries, claiming they did not exist. Chen Decl. ¶ 36. Thus, after a Block employee testified that he and his colleagues used Slack communications to understand the meaning of data fields, the Bureau issued Document Request No.15. *Id*.

- Block has not produced at least 200 distinct policy, procedure, and training documents, and roughly 100 distinct macros (i.e., form responses that Block uses in responding to customer inquiries or requests for refunds), in response to Document Request Nos. 5 and 6, despite the fact that the Bureau has identified those documents for Block. Chen Decl. ¶ 29. Although Block represented generally that it supplemented its production, Opp. Br., at 1, 2 (ECF No. 21), what it failed to explain is that its "supplementation" consisted of only 29 documents and remains incomplete. Chen Decl. ¶ 14.

Block has made this case quite simple: having failed to make the required production, even more than year after the last CID was served, Block now represents to the Court that it "has not asked the Court to modify or quash the CIDs, or stated that it does not intend to comply with them." *See* Opp. Br., at 3 (ECF No. 21). If Block is not contesting the Requests, and is not objecting to compliance, the only issue seems to be the speed of production. But

1  Block cannot set its own timeline to respond to the Bureau's CIDs. By waiting until the
2  Bureau filed this action to produce thousands of documents with little to no value, while
3  withholding other important documents, Block is attempting to do just that.
4      The facts here are almost identical to those in *CFPB v. ECMC*, where the Court
5  ordered production of 70 missing emails that the Bureau obtained from companies doing
6  business with ECMC. *See* Order, attached. Like the Respondent in *ECMC*, Block has: 1)
7  failed to meet production deadlines in response to two CIDs, *see* Chen Decl. ¶¶ 5 - 10; 2)
8  represented it would produce by certain dates after production deadlines passed but failing to
9  complete such production, Chen Decl. ¶¶ 9, 14 - 16, 18, 26, 31; 3) failed to certify
10 compliance with the CID, Chen Decl. ¶ 40; 4) argued it was in the process of complying
11 when the Bureau filed its Petition, Chen Decl. ¶ 11; and 5) failed to produce key responsive
12 documents that third parties produced, Chen Decl. ¶¶ 12, 34. As the *ECMC* and *ASG*
13 *Solutions* courts did, this Court should likewise enforce production of Block's responses to
14 all of the CID Requests at issue, and require Block to provide the requisite Certificates of
15 Compliance certifying its productions are complete.
16     **III. Conclusion**
17     For the reasons set forth above, the Bureau respectfully requests that this Court grant
18 the Petition and enter an order requiring Respondent to comply with Interrogatory Nos. 24, 25,
19 27, and 29, and Document Request Nos. 5, 6, 13, 14, 15, and 18, of the CIDs.
20
21 Dated:  November 4, 2022
22                                       /s/ Joyce Chen
23                                       Joyce Chen
                                         Sarah Baldwin
24                                       *Enforcement Attorneys*
25                                       *Attorneys for Petitioner*
26                                       *Consumer Financial Protection Bureau*
27
28

Case No. 3:22-mc-80214-SK

BUREAU'S REPLY IN FURTHER SUPPORT
OF PETITION TO ENFORCE CIVIL
INVESTIGATIVE DEMANDS