JOYCE CHEN (NY Reg #4717245)
Tel.: (202) 702-4266 / Email: joyce.chen@cfpb.gov
SARAH BALDWIN (NY Reg #5414248)
Tel.: (202) 480-6912 / Email: sarah.baldwin@cfpb.gov
1700 G Street, NW
Washington, D.C. 20552

*Attorneys for Petitioner*
*Consumer Financial Protection Bureau*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>       Petitioner,<br><br>       v.<br><br>BLOCK, INC.,<br><br>       Respondent. | Case No.  22-mc-80214-SK<br><br>**PETITIONER'S REPLY BRIEF IN FURTHER SUPPORT OF PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS** |

I, Joyce Chen, declare as follows:

1.      I am a Senior Litigation Counsel in the Office of Enforcement at the Consumer Financial Protection Bureau (Bureau).

2.      I am lead counsel on a nonpublic Bureau investigation concerning possible violations of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536, the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., and Regulation E, principally 12 C.F.R. §§ 1005.11 and 1005.6, or 12 C.F.R. §§ 1005.18(d) and 1005.18(e).

3.      I am authorized to execute this declaration and verify the facts that are set forth in the Bureau's Reply brief in further support of the Petition to Enforce Civil

Investigative Demands. The facts set forth in this declaration are based on my personal knowledge or information made known to me in the course of my official duties.

4.      I refer to, and incorporate, the factual allegations set forth in the declaration I executed on August 18, 2022 (Decl. of Joyce Chen in Support of the Bureau's Petition to Enforce (Chen Pet. Decl.)) (ECF No. 2).

### Block's Course of Dealing with the Bureau

5.      Block made various productions after the Bureau filed the instant Petition to Enforce (Petition). The Interrogatories and Document Requests that the Bureau is seeking to enforce (i.e., Interrogatory Nos. 24, 25, 27, 29 and Document Request Nos. 5, 6, 13, 14, 15, and 18) remain deficient.

6.      Block has promised numerous times to the Bureau that it would produce responses to Requests by dates that were already well past the extended deadlines the Bureau provided. Chen Pet. Decl. at ¶¶ 19-20 (ECF No. 2).

7.      After Block failed to meet its promises, and after nearly a year passed since the Bureau served the 2021 CID, on July 11, 2022, the Bureau requested that Block produce responses to all the outstanding documents and information without further delay, and indicated that if Block failed to comply, it may enforce the CID in federal court. *See* Exhibit G, attached to Chen. Pet. Decl. (ECF No. 2). At that point, the Bureau had received zero Responses to eight out of the ten CID Requests at issue.

8.      Block responded to the Bureau's July 11 deficiency letter on August 1, 2022, representing it would "endeavor to" begin providing responses to Document Requests seeking email communications by August 31, 2022, via rolling production but without providing a date of completion. *See* Block Exhibit B, attached to Opp. Br. (ECF 21.)

9.      Block's productions in response to eight of the ten CID Requests at issue were made late, and some one full year late. For example, Block initially represented it would provide responses to Interrogatory Nos. 24 and 25 by October 22, 2021, the date

they were due, but did not provide any response until late August 2022, after the Bureau filed its Petition to Enforce.

10.     After almost a year of promising production to the 2021 CID, Block did not begin to produce documents in earnest until after the Bureau filed this Petition.

11.     On August 18, 2022, the Bureau notified Block that it intended to file a petition to enforce the CIDs later that day, and on August 19, 2022, Block produced 57,789 files.

12.     Block also produced documents to the Bureau on October 6, and 19, 2022, in addition to its post-Petition, August 2022 productions. But as described below, most of these documents are only marginally responsive, and Block failed to produce at least 400 relevant external emails that the Bureau received from third parties. The Bureau continues to evaluate Block's post-Petition production for deficiencies.

13.     On September 13, 2022, the Bureau reminded Block of the outstanding deficiencies in its production and requested that Block provide the Certificate of Compliance for the 2020 CID after it produced documents the Bureau identified as missing. *See* Exhibit A, attached.

14.     On October 10, 2022, nearly three months after the Bureau identified deficiencies and requested immediate production, Block represented that it was "still reviewing ESI materials and will continue to make rolling productions, including from the handful of remaining custodians to the extent they possess responsive, non-privileged information." Block represented that it "intends to complete its production of materials responsive to these requests no later than December 20, 2022, if not earlier."

15.     But the Bureau cannot rely on this or other representations by Block about when it will produce because its representations have proven inaccurate.

16.     For example, Block initially represented it would provide responses to Interrogatory Nos. 27 and 29 by November 5, 2021, the date they were due. Block then promised that it would provide its overdue response to Interrogatory No. 27 by December

3

15, 2021; in January 2022, it then said it would provide its response to Interrogatory Nos. 27 and 29 by early February 2022. Block did not provide any responses to Interrogatory Nos. 27 or 29 until late August 2022, after the Bureau filed its Petition.

17.     Many times, when Block made late productions, it would produce only a handful of documents, and accompany its production with a statement that "Block reserves a right to supplement this response." Additional late productions to a Request would similarly only include a handful of documents. At least 22 productions (i.e., most of Block's productions) contained less than 16 documents. Thus, Block's representation of making dozens of productions omits the fact that the majority of Block's productions include less than 16 documents.

18.     Block's claims of substantial compliance are disingenuous. For example, in addition to failing to produce at least 400 emails responsive to Document Request No. 13 that Block's business partners produced, Block also withheld several documents responsive to Interrogatory No. 25. Instead, Block deluged the Bureau with tens of thousands of unresponsive documents after the Bureau filed its Petition and claimed substantial compliance. *See* Exhibit B, attached.

19.     As another example, Block's representation regarding producing "millions of lines" of data, Opp. Br. 4, n. 2 (ECF No. 21), omits the fact that Block failed to provide *any* data for certain issues being investigated such as whether Block provided provisional credits to consumers disputing unauthorized peer to peer transactions. Block provided no specific explanation for its lack of data on several issues under investigation. Similarly, it argues that it initiated multiple meetings with the Bureau but fails to discuss that the multiple meetings were necessitated by Block's failure to initially provide proper personnel at the meet and confers, as required by the Bureau's regulations, 12 C.F.R. § 1080.6(c)(1), or be knowledgeable about its ESI methods of retrieval, 12 C.F.R. § 1080.6(c)(2). Block's failures in this regard also contributed to its delay; indeed, Block

DECLARATION OF JOYCE CHEN IN SUPPORT OF
PETITIONER'S MOTION FOR LEAVE TO REPLY

did not provide its list of ESI search terms until over five months after the Bureau issued the CID.

20.     Block asked the vast majority of its questions seeking clarification of the Bureau's 2021 CID during the meet and confer process, and the Bureau provided prompt responses shortly thereafter. Subsequent questions that Block has asked the Bureau during the course of this investigation concerned words that were so simple, such as the meaning of "availability," "automatic," and "accessibility," that the questions appeared more a strategic move to justify delay than actual confusion. Block sought clarification of the meaning of those words during meet and confers held on September 23, 2022 and October 17, 2022.

### Deficient Requests

21.     Interrogatory No. 24 generally requests information regarding, rate, number, and amount of chargebacks and ACH returns for Cash App, peer to peer, and Cash Card transactions. Block's response is deficient because it fails to provide data for the majority of year 2016 as to the Cash Card. This information is important because Block handles the issues being investigated primarily through the filing of chargebacks.

22.     Interrogatory No. 25 generally requests information regarding the communications Block has had with financial institutions or card networks regarding the handling, investigating, or monitoring of Block's chargebacks, ACH return rates, or related metrics, including whether Block was told it was approaching or exceeding any thresholds. Block's response to Interrogatory No. 25 is deficient because it did not include numerous emails that the Bureau received from other entities that would be responsive to this Interrogatory. Instead, after the Bureau filed its Petition, Block produced tens of thousands of auto-generated processing documents that were not communicated to any financial institution or card network (and were therefore unresponsive). This interrogatory is important because it would provide the Bureau

insight into concerns that Block, and its partner institutions had regarding issues under investigation.

23. The documents Block referred to in response to Interrogatory No. 25 were the exact same documents it produced for Document Request No. 13. The Bureau communicated with Block numerous times what it sought in Interrogatory No. 25. Nonetheless, Block did not answer the Interrogatory separately, and its response is deficient.

24. Interrogatory No. 27 generally requests the data points, triggers, and other analyses that Block has used to determine that activity in a Cash App account warrants freezing, suspending, locking, or blocking a transaction. Block responded only to the subparts of this request. The information Block did not provide is important so that the Bureau can assess whether Block's processes violate the consumer financial laws at issue in this investigation, including the CFPA and Regulation E.

25. Interrogatory No. 29 requests that Block identify all individuals who participated in responding to this CID, the current position of each individual, and the specific tasks performed by each individual. Block's response was deficient because it failed to provide the "specific tasks performed by each individual." Block provided the same description of the specific task performed for each of the 45 individuals identified—"Assisted with responding to the CID". The Bureau had already asked Block to identify all individuals who "participated in responding to this CID." The question regarding "specific tasks" is unanswered to this day. It would provide information about the knowledge and expertise of each of the named individuals.

26. Block initially represented it would provide responses to Document Request Nos. 5 and 6, contained in the 2020 CID, by September 23, 2020. Document Request Nos. 5 and 6 were due on October 14, 2020. Block made productions in response to these Requests on September 23, 2020, October 14, 2020, and January 22, 2021. After reviewing these productions, during a phone conference on March 5, 2021, the Bureau

6

communicated to Block that it noticed that these productions included various links to other documents that would be responsive to another Request in the 2020 CID. The Bureau reminded Block of its obligation to produce all responsive documents.

27.     On July 11, 2022, the Bureau issued a deficiency letter to Block explaining that its response to Document Request Nos. 5 and 6 is deficient because various documents that Block produced refer, by title, to other linked policy documents that would be responsive to Document Request Nos. 5 and/or 6, but these documents do not appear to have been produced. The Bureau provided an example of a document it expected to be produced entitled "Disputes – Chargebacks & Payment Disputes," which was referred to within previously produced documents.

28.     During an August 18, 2022 teleconference, Block asked the Bureau to identify missing documents responsive to Document Request Nos. 5 and 6. The Bureau communicated that it was not the Bureau's responsibility to provide this information, which is more readily available to Block.[1] Nonetheless, the Bureau reviewed Block's production and provided a list of referenced documents Block had not produced on September 13, 2022.

29.     The Bureau has identified roughly 200 distinct documents, and roughly 100 distinct macros (i.e., form responses that Block uses in responding to customer inquiries or requests for refunds), referenced in Block's production, that are responsive to Document Request Nos. 5 and 6, that Block has still failed to produce.

30.     Document Request Nos. 5 and 6 remain deficient because Block still has not provided, at a minimum, most of the documents specifically identified to Block by the Bureau.

31.     Block initially represented it would provide responses to Document Request Nos. 13, 14, and 18, by November 5, 2021, and Document Request No. 15 by

---

[1] Block faults the Bureau's counsel for being unable to recite the names of over 200 policy documents, in response to its question. *See* Opp. Br., at p. 5, ftn. 4.

October 22, 2021. Block has yet to provide any response to Document Request No. 15, and did not provide any responses to the other requests until late August 2022, after the Bureau filed its Petition.

32.     Document Request No. 13 seeks Block's internal and external communications regarding customer service activities, account takeovers, chargeback thresholds set by banks or card networks, and audits or other analyses relating to these topics. Even though Block knew from the first meet and confer meetings with the Bureau that it would seek to limit this Request to certain custodians, Block did not provide a list of proposed custodians until several months afterwards, and only after the Bureau asked Block to provide this several times. Block's proposed custodian list only provided the names of individuals who communicated regularly with Block's business partners, and was inappropriate because it omitted names of employees engaging in internal communications regarding the issues in Document Request No. 13. Accordingly, the Bureau added names to the list.

33.     Block's production is marginally responsive and appears to omit internal communications relating to those topics. The production also fails to address whole subparts or large portions of certain subparts of the request.

34.     As of November 2, 2022, the Bureau has identified over 400 documents responsive to Document Request 13, that Block has never produced, in third party productions. These emails relate to Block's handling of consumer disputes and Regulation E issues, which are the subject of the Bureau's investigation.

35.     Document Request No. 14 seeks certain communications of Brian Grassadonia, the CEO of Cash App, regarding unauthorized transfers and other issues being investigated. Most of the materials produced by Block contain automated daily reports relating to the number of application downloads. *See* Exhibit C, attached. The Bureau identified approximately 60 emails responsive to this request, in productions by third parties, that were not produced by Block.

8

36.     Document Request No. 15 seeks Slack communications regarding definitions of data fields relating to customer service and disputes. The Bureau sought this information because Block refused to provide data dictionaries, claiming they did not exist. The Bureau asked a Block employee how he or his colleagues figured out the meaning of data fields, and he testified that he got this information from Slack communications. Block has not produced any documents responsive to Document Request No. 15 on the grounds that it has not identified any responsive material "involving the custodians and search terms previously negotiated with the Bureau."

37.     On September 13, 2022, the Bureau reminded Block that it had not negotiated any search terms or custodians for this Request. *See* Exhibit A, attached. On October 10, 2022, Block expressed that "it is our expectation that the custodians and search terms for Document Request Nos. 13 and 18 would be appropriate for Document Request No. 15, as well." Block never requested any such modification to Document Request No. 15.

38.     To date, Block has failed to produce anything in response to Document Request No. 15.

39.     Document Request No. 18 seeks audits, analyses, policies, procedures, and communications regarding chargebacks, customer service activities, and reports generated from spreadsheets used by Block in conducting or tracking customer service activities. The documents Block produced are marginally responsive and appear to omit internal communications relating to those topics. The production also fails to address whole subparts or large portions of certain subparts of the request.

40.     Block has not provided a signed certificate of compliance in connection with the 2020 CID or the 2021 CID.

Case No.: 3:22-mc-80214-SK

DECLARATION OF JOYCE CHEN IN SUPPORT OF PETITIONER'S MOTION FOR LEAVE TO REPLY

1    I declare under penalty of perjury that the foregoing is true and correct and that this

2  declaration was executed on the 4th day of November 2022 at New York, New York.

3

4                              /s/ *Joyce Chen*
                               Joyce Chen
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 3:22-mc-80214-SK                 DECLARATION OF JOYCE CHEN IN SUPPORT OF
                                           PETITIONER'S MOTION FOR LEAVE TO REPLY